IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.    ARLETA WATSON<br>                Plaintiff,<br><br>     v.<br><br>1.    VICI COMMUNITY<br>      DEVELOPMENT CORP,<br>      and<br>2.    CINDY ARNOLD,<br>             Defendants | Case No.:5:20-cv-01011-F |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**COMES NOW,** Arleta Watson, by counsel, pursuant to **FRCP 15 (a) (1) (B)** and files her First Amended Complaint.

1.     The Plaintiff, Arleta Watson, brings this action for Declaratory Judgment against the Defendants for violations of the **CARES Act, 15 USC § 9058** and the United Department of Agriculture, Rural Development Division, Multifamily Housing Regulations, **7 C.F.R. § 3560**, et seq. The Plaintiff also seeks damages and injunctive relief against the Defendants for violations of the Fair Housing Act and the Fair Housing Amendments Act, **42 U.S.C.A. §§ 3601-3619**, the Oklahoma Discrimination in Housing Act, **25 Okla. Stat. Ann. § 1451, et. seq**., the Rehabilitation Act of 1973, **§ 504**, the Oklahoma Residential Landlord and

Tenant Act, **41 O.S. § 101, et seq**., the **Oklahoma Consumer Protection Act**, **15 O.S. § 751, et seq.**, and for common law Breach of Contract.

2.     The Defendants are denying housing to the Plaintiff, a renter, and are otherwise making housing unavailable to her, because of her disability, in violation of the **Fair Housing Act, 42 U.S.C.A. § 3601, et seq.**, and the **Oklahoma Discrimination in Housing Act, 25 O.S. § 1451, et seq**. by refusing to allow her to recertify for housing, by refusing to accept her timely tendered rental payments, by terminating her tenancy without cause, and by filing multiple frivolous eviction actions against her.

3.     The Defendants are discriminating against the Plaintiff, on the basis of her disability, in violation of the **Rehabilitation Act of 1973, § 504**. The Plaintiff is a person with a disability who qualifies to participate in the Defendants' rental assistance program. The Defendants receive federal funding from the USDA to operate.  Because of her disability, since 2019, the Defendants have denied the Plaintiff an equal opportunity to participate in its federally funded rental assistance program by refusing to allow her to recertify for available rental assistance and housing.

4.     The Defendants are denying housing to the Plaintiff, a renter, and are otherwise making housing unavailable to her, because of her association with another disabled person, in violation of the **Fair Housing Act** and the **Oklahoma**

**Discrimination in Housing Act**. The Plaintiff assisted a former disabled tenant in the exercise of rights protected under the Fair Housing Act and the Oklahoma Discrimination in Housing Act, by referring her to counsel and assisting the former tenant in the prosecution of a discrimination action against the Defendants. The parties settled the matter in August 2020. Immediately after the parties settled the action, the Defendants filed another baseless eviction action against the Plaintiff in August 2020.

5.     The Defendants are discriminating against the Plaintiff, a renter, in the terms, conditions, and privileges of rental of a dwelling on the basis of her disability, in violation of the **Fair Housing Act** and the **Oklahoma Discrimination in Housing Act**. The Defendants permit other tenants to have agents to deliver their monthly rental payments to the office without penalty. The Defendants refuse to allow the Plaintiff to have agents timely deliver her rent for her although she is unable to walk to the office because of her disability. The Defendants have further based their most recent eviction action in part upon lease violations that derive from the Plaintiff having others to timely deliver her rent to the rental office because she had difficulty walking.

6.     The Defendants are discriminating against the Plaintiff, a renter, in the terms, conditions, and privileges of rental of a dwelling on the basis of her association of another person with a disability, in violation of the Fair Housing Act

and the Oklahoma Discrimination in Housing Act. The Defendants' lease violation policy does not inform tenants that they will receive lease violations for the conduct of other tenants. In April 2019, the Defendants served the Plaintiff with a lease violation when another disabled tenant violated the lease by driving on the grass, although the Plaintiff had no control over the other tenant.

7.      The Defendants are discriminating against the Plaintiff, a renter, on the basis of her disability, by refusing to grant requested reasonable accommodations that are necessary for the Plaintiff to have an equal opportunity to use and enjoy the premises, in violation of the **Fair Housing Act**, the **Oklahoma Discrimination in Housing Act**, the USDA regulations, and the terms of the lease agreement. In 2018, the Defendants terminated the Plaintiff's reasonable accommodation that allowed her to pay rent when she received her benefits check the third week of the month. To date, the Defendants refuse to reinstate the reasonable accommodation as it previously existed, after request.

8.      The Defendants are retaliating against the Plaintiff because she exercised rights that are protected under the **Fair Housing Act**, the **Rehabilitation Act of 1973, § 504**, and the **Oklahoma Discrimination in Housing Act**. In 2018, the Defendants terminated the Plaintiff's reasonable accommodation. Although the Defendants purported to reinstate the reasonable accommodation in 2019, the

4

Defendants now penalize the Plaintiff whenever she pays rent, if she pays early, on time, or if it is even a minute late.

9.      The Defendants are retaliating against the Plaintiff because she assisted another individual with enforcing rights that are protected under the **Fair Housing Act** and the **Oklahoma Discrimination in Housing Act**. In August 2019, after the Defendants dismissed its eviction action against another disabled tenant, for whom the Plaintiff served as a witness in a discrimination case, the Defendants immediately filed an eviction action, without cause, against the Plaintiff.

10.     The Defendants, and their agents, have made discriminatory statements to the Plaintiff, on the basis of her disability in violation of the **Fair Housing Act** and the **Oklahoma Discrimination in Housing Act**. Since 2014, the Plaintiff's mobility impairments have been visibly apparent to the Defendants and supported by a sworn physician's statement. The Defendants and their agents continuously state,  verbally and in writing, to the Plaintiff that her statements that she is disabled are false.

11.     The Defendants have filed forcible entry and detainer actions against the Plaintiff, in violation of the USDA rules and regulations, **7 CFR. § 3560**, which prohibit the nonrenewal of a tenant's lease, upon expiration, unless the landlord has good cause to support the nonrenewal of the tenancy. In cases of nonrenewal, the USDA regulations require the landlord to provide the tenant with a written notice of

nonrenewal that provides the specific grounds for the nonrenewal of tenancy. The Defendants terminated the Plaintiff's tenancy in 2019 without providing the Plaintiff with a conforming written notice of nonrenewal.

12.     The Defendants have filed forcible entry and detainer actions against the Plaintiff in violation of the **Oklahoma Residential Landlord and Tenant Act**, **41 O.S. §§ 131 (B)** and **132 (C)-(D)**. In 2020, the Defendants filed a forcible entry and detainer action against the Plaintiff for nonpayment of rent and unstated lease violations. The Defendants have refused to accept the Plaintiff's rent since July 2019, have not provided the Plaintiff with a written notice demanding rent since that time, and has not served the Plaintiff with any conforming written notices for violations under **41 O.S. § 132 (C)-(D)**, which the Defendants claim serve the basis for the August 2020 eviction action.

13.     The Defendants accepts vouchers and federal funding under the USDA Rural Development program. Accordingly, the Defendants are a **CARES Act** covered property. Beginning July 25, 2020, the **CARES Act** requires landlords of covered properties to issue thirty-day written notices to vacate to tenants for non-payment of rent. The **CARES Act** requires a landlord to wait until the expiration of the thirty-day notice to vacate to file an action in eviction. On August 24, 2020, the Defendants filed an action for eviction for rent and court costs, against the Plaintiff, a tenant in a covered property, without first issuing a thirty-day written notice to

vacate and waiting until its expiration before filing to evict, in violation of the **CARES Act**.

14.    The Defendants, an Oklahoma business, in the ordinary course of its business, has engaged in unfair and deceptive trade practices that violate the **Oklahoma Consumer Protection Act, 15 O.S. § 751**. Since July 2019, the Defendants' agents have refused each month to accept the Plaintiff's timely tendered rent. In August 2020, the Defendants sued the Plaintiff for unpaid rent. The Defendants claimed that before it filed the lawsuit, that it had demanded rent from the Plaintiff and that she refused to pay it. The Defendants never demanded rent from the Plaintiff, and she never refused to pay it.

15.    The Defendants, as an Oklahoma landlord, have harassed the Plaintiff, and have made repeated, unreasonable, and unlawful demands for entry into the Plaintiff's rental unit, during her valid tenancy, in violation of the **Oklahoma Residential Landlord and Tenant Act**, **41 O.S. § 124 (A)**,  by filing numerous unlawful forcible entry and detainer actions against the Plaintiff since 2018 and by demanding entry to conduct inspections without first providing the Plaintiff with prior written notice of not less than one  day prior to the demanded entry since 2019.

16.    The Defendants have breached the terms of the lease agreement by violating the **Fair Housing Act**, the **Oklahoma Discrimination in Housing Act**, the **CARES Act**, the **USDA regulations** and **rules**, **The Rehabilitation Act of**

**1973, Section 504**, and the **Oklahoma Residential Landlord and Tenant Act**. The Defendants' lease requires it to comply with the federal and state anti-discrimination laws, the USDA regulations and rules, and the landlord state and local laws. The Defendants' actions, as pled herein, violate the stated laws and regulations, and thus breach the lease agreement between the Parties.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the Plaintiff's claims brought under federal law pursuant to **28 U.S.C. §§ 1331**, **1343**, and **2201** and jurisdiction over state law claims pursuant to **28 U.S.C. § 1367**.

18.     This Court has personal jurisdiction over the Defendants because the Defendants conduct business in the Western District of Oklahoma, in Dewey County, are registered entities in the State of Oklahoma, and/or reside in the Western District of Oklahoma, and the Plaintiff's claims for relief arise from the Defendants' conduct that occurred in the Western District of Oklahoma, Dewey County.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) because all or a substantial part of the acts and omissions of the Defendants giving rise to this action occurred in the Western District of Oklahoma.

## PARTIES

20.     Arleta Watson is a 79-year-old Caucasian female senior citizen. She has resided in the Vici Manor Apartments located in Dewey County, Vici, Oklahoma since around 2014.

21.     Vici Community Development Corporation (Vici) is an Oklahoma corporation. It owns Vici Manor Apartments - a sixteen-unit multi-family housing complex, located at 300 West 8th Street, Vici, Oklahoma, 73859 in Dewey County in the Western District of Oklahoma. It is not tribal property. Vici receives funding from the United States Department of Agriculture's Rural Development Division (USDA), a federal agency, to provide rental assistance and housing to low-income individuals. Vici participated in the USDA rental assistance program for the entirety of the Plaintiff's tenancy (from 2014) and continues to participate in that program.

22.     Cindy Arnold is an agent for Vici Community Development Corporation. She has functioned in a management capacity at the Vici Manor Apartments for more than twenty years. Arnold terminated the Plaintiff's reasonable accommodation after the Plaintiff complained about Arnold's failure to make repairs to the property. Arnold made statements that the Plaintiff was not disabled and supervised the discriminatory conduct and other offending conduct complained of herein. She works as an agent and in joint venture with Vici in the violations complained of herein.

## FACTUAL BACKGROUND

### *Background facts about the Watson tenancy and the Ms. Watson's initial reasonable accommodation request.*

23.     Arleta Watson (hereinafter, "Ms. Watson") is a 79-year-old Caucasian female senior citizen.

24.     Ms. Watson is a person with at least one physical or mental impairment that substantially limits her ability to engage in one or more major life functions. Ms. Watson has permanent mobility issues due to knee impairments. She also has other physical and mental impairments.

25.     Ms. Watson also has at least one record of her disability, which she has presented to the Defendants during her tenancy. Specifically, Ms. Watson presented Arnold with a letter from her physician, on his letterhead, from 2013, in which the physician stated that Ms. Watson has permanent mobility issues due to surgeries on her knees. Ms. Watson presented the physician's letter to Arnold in 2014 at the beginning of her tenancy to establish her disability, and again, in 2018, to support the reinstatement of her reasonable accommodation.

26.     In 2014, the Parties entered into a lease agreement for federally assisted housing. The lease requires the Defendants to follow federal and State laws, the USDA regulations, and Civil Rights laws, inclusive of the Fair Housing Act, the Rehabilitation Act of 1973, and other laws.

27.     The lease flows from a mortgage contract between the USDA and the Defendants, of which Watson is a third-party intended beneficiary.

28.     When she moved to Vici Manor Apartments, Ms. Watson relied on crutches because she was still recovering from knee surgery and could not walk without them. Because Ms. Watson has permanent mobility issues, she relies upon a walker and a cane. Ms. Watson cannot safely or reasonably ambulate without her assistive devices. Ms. Watson also relies on a walker and a cane to assist her with walking, support, and balance.

29.     Although Ms. Watson primarily uses her walker inside of her residence, Cindy Arnold has witnessed Ms. Watson using her cane outside of her residence and crutches since her tenancy began in 2014 and continuing.

30.     Vici Manor Apartments has a rocky pathway that leads to the recreation (hereinafter, "rec.") center office. Because of her mobility impairments, the rocky pathway is difficult for Ms. Watson to navigate.

31.     The rocky pathway that leads to the recreation center presents great difficulty for Ms. Watson because of her mobility impairments and ambulation difficulties, and often prevents her from paying her rent in person.

32.     Because of the rocky pathway, and Ms. Watson's mobility impairments, she must rely on others to deliver her rent payments to the recreation center.

33.    Since 2019, Vici has penalized Watson with lease violations when she does not pay her rent in person at the recreation center. This occurs even when Watson's rent arrives early or on time to the Defendants.

34.    From the time that she moved into Vici Manor Apartments, Ms. Watson has received monthly public benefits, of a little more than $1,000, as her source of income because of her age.

35.    Because of Ms. Watson's age and disabilities, included but not limited to her walking impairments, she cannot work to earn additional income. Therefore, she must rely solely on her monthly social security benefits to support herself.

36.    When Ms. Watson applied for housing in 2014, she informed the Defendants that her only income derived from social security benefits. The amount of the benefit means that Watson, who has no other income or assets, lives at poverty level (as defined by the USDA).

37.     When Ms. Watson applied for housing in 2014, she told the Defendants that she did not receive her social security benefits until the third week of each month leaving her unable to pay her monthly rent until after receipt of her monthly social security benefits.

38.    When she moved in, Ms. Watson verbally requested permission from Arnold to pay her rent on the third week of the month because Ms. Watson received her public benefits check the third week of the month. Because of her disabilities,

Watson cannot work to earn other income to pay rent before she receives her social security benefit.

39.     Arnold granted Watson's request for a reasonable accommodation and permitted her to pay her rent the third week of the month.

40.     Upon information and belief, Arnold also allows several tenants to pay their rent when they receive their public benefits checks, without penalty.

41.     About two years after Ms. Watson moved to Vici Community Manor Apartments, her acquaintance, Judy McAdoo moved to Vici Community Manor Apartments.

42.     Ms. McAdoo was also disabled, having numerous physical disabilities, as are defined under the Fair Housing Act.

### First Termination of the Reasonable Accommodation

43.     In April 2018, the Vici Manor Apartment residents met to discuss the deficiencies in the maintenance of the complex. Ms. Arnold's husband was the maintenance man. Ms. Watson expressed her grievances about the lack of maintenance of the property. She also contacted the USDA to complain.

44.     After the meeting in April 2018, on June 8, 2018, Ms. Arnold signed, as an agent or in joint venture with Vici, and filed a forcible entry and detainer action (hereinafter, "eviction") against Ms. Watson to have her evicted from the property.

In the eviction action, Ms. Arnold sought to recover alleged rent for several years. Dewey County District Court Small Claims Case No. SC-2018-11.

45.     By Order dated July 5, 2018, the state district court denied Vici's claim for unpaid rent against Watson, stating that Vici waived its right to the rent.

46.     Vici did not timely appeal the decision of the state district court.

47.     In September 2018, Ms. Arnold, as property manager for Vici Community Manor Apartments, sought possession of Ms. Watson's unit again through the court process. Arnold claimed that Watson violated the order of the court by not paying her rent as directed by the court. The court denied the request.

48.     After the second failed attempt at obtaining possession, Arnold, without written notice to Ms. Watson, rescinded the reasonable accommodation by which she allowed Ms. Watson to pay rent the third Wednesday of the month when she received her social security income.

49.     In October 2018, after the second failed attempt to obtain possession of Ms. Watson's unit, Cindy Arnold issued to Ms. Watson a lease violation for alleged violations that Arnold allegedly discovered during an inspection that she conducted in July 2018 and August 2018.  Arnold claimed that in July and August 2018, Watson had a clutter hall closet, flooded the complex, and had unauthorized occupants living in her home.

50.     After receiving the notice, Watson, through counsel, denied the alleged violations and disputed the notice of lease violation as untimely. Ms. Watson's counsel sent the letter disputing the lease violations to Vici's counsel.

***Ms. Watson's first request to reinstate the reasonable accommodation to pay, the Defendants' retaliation, and the Defendants' denial of the request***

51.     On November 2, 2018, Ms. Watson, by counsel, in writing, requested the reinstatement of Ms. Watson's reasonable accommodation to pay rent the third week of the month, to the Defendants through their counsel. Her monthly rental rate was $309.00.

52.     To support the accommodation request, Ms. Watson, by counsel, provided a sworn statement from her doctor, which verified her permanent disability, to the Defendants' counsel for delivery to the Defendants.

53.     The doctor's sworn statement read, "Ms. Watson has had surgery done on both knees and has permanent limited mobility. 'I declare under penalty of perjury that I have examined the statements contained herein, and to the best of my knowledge and belief, they are true, correct, and complete.' Electronically verified by Corey Mayo, DO."

54.     On November 13, 2018, the Defendants, by counsel, acknowledged receipt of the November 2, 2018 request by Ms. Watson, to the Defendants, for reinstatement of the reasonable accommodation to pay her rent the third Wednesday of the month.

55.     The Defendants' counsel sent Cindy Arnold a copy of the November 13, 2018 letter.

56.     The third Wednesday of November 2018 was November 21, 2018.

57.     On November 13, 2018, Cindy Arnold issued and delivered to Ms. Watson a notice of lease violation for past due rent, demanding an additional $10 as a late fee penalty to the rent demand. Arnold did not withdraw the notice.

58.     The November 13, 2018 letter requested proof of disability and government benefits. Ms. Watson, by counsel, forwarded the requested documents on November 19, 2018 to Vici's counsel.

59.     From November 19, 2018 through December 2018, the Defendants did not reinstate Watson's accommodation to pay her rent the third week of the month after she received her benefits check and did not engage in an interactive process about the request.

### *Ms. Watson's second request to reinstate the reasonable accommodation to pay rent the third week of the month.*

60.     On December 28, 2018, Ms. Watson, by counsel, made a second written request, through Vici's counsel, to the Defendants for reinstatement of the terminated reasonable accommodation.

61.     On January 11, 2019, the Defendants, by written notice from their counsel, agreed to allow Ms. Watson to pay her rent on the third Wednesday of the month, but proposed severe conditions if Watson was even one minute late.

62.     In the notice, the Defendants' counsel wrote, "As we have told you in the past the claims and allegations that your client is disabled is false… My client does not agree that your client is disabled ..."

63.     In the notice, the Defendants agreed that Ms. Watson, or someone on her behalf, would pay the rent on the third Wednesday of each month by 4:30 p.m.

64.     In the notice, the Defendants proffered that if Ms. Watson was even one minute late paying her rent, the Defendants would enforce the lease.

65.     In writing, Ms. Watson, by counsel, rejected the "one-minute late" term as a different term and condition of rental since other tenants are not subjected to the same "one-minute late" rule.

66.     The final executed agreement did not include the "one-minute late" term.

67.     The final executed agreement did not incorporate by reference or otherwise, the January 11, 2019 notice.

68.     The terms of the Amended Lease read:

It is agreed and understood between the parties hereto that the lease entered into between Arleta Watson, the tenant and Landlord has amended for the sole purpose that the Landlord will accept payment one time a month for the full amount of rent at the front office by 4:30 p.m., on the 3rd Wednesday of each month.

In the event that the tenant breaches that agreement, she will be considered in default of this lease and all opportunities rendered to such landlord due to said default applies. This in no way extends the lease agreement. All terms and conditions of the previous lease agreement signed by Ms. Watson applies.

Landlord:                          Tenant:

s/ Cindy Arnold, Manager          s/Arleta Watson
Cindy Arnold, Manager 1-23-19     Arleta Watson, Tenant

### *Retaliation against Ms. Watson for exercising her right to request a reasonable accommodation*

69.     Ms. Gresham became the site manager at Vici Manor Apartments at the beginning of 2019.

70.     Ms. Arnold worked closely with Ms. Gresham.

71.     When she became the site manager, Ms. Gresham, under the direction of Ms. Arnold, issued a written notice in which she adopted rules specifically targeting Ms. Watson.

### Retaliation: February 20, 2019 Lease Violation

72.     The date of the third Wednesday in February 2019 was February 20, 2019.

73.     On February 20, 2019, Ms. Watson was running late because of business in another town. She called the Defendants to inform them that she would be there just after 4:30 p.m. to pay her rent. Ms. Watson arrived at the office at 4:38 pm, at which time, her friend tendered Ms. Watson's rent of $309.

74.     On February 20, 2019, the Defendants issued a lease violation to her. The written basis for the lease violation read,

The specific lease violations is/are: <u>Having rent brought in late by Ms. Yvonne Hussey. Rent was received at 1638 on 02-20-2019</u>…

The paragraph(s) in your Lease you which has been violated is/are: <u>Amended Lease paragraph detailing how and when rent is to be paid for apartment #16</u>.

In order to correct this violation(s) you must take the following action: <u>Ms. Watson is to bring her rent to the rec. center office before 1630 on the third Wednesday of each month.</u>

75.    Amanda Gresham signed the Notice of Lease violation.

76.    The Lease agreement does not provide for lease violations for paying rent eight minutes late.

## Retaliation: March 1, 2019 Notice of Non-Renewal of Tenancy

77.    On March 1, 2019, by counsel, the Defendants sent a notice of non-renewal of tenancy to Ms. Watson's then former counsel.

78.    The notice read:

On behalf of Vici Community Development Corporation please be advised pursuant to Oklahoma Landlord Act, and federal law hereto, that your client Arleta Watson is given notice that Vici Community Development Corporation is not going to renew her lease when the current lease expires.

You are notified that you shall have the apartment vacated, cleaned and keys turned over to the landlord by May 31, 2019. There will be no requests for extensions granted.

Please advise your client, Ms. Watson, of this notice immediately.

79.    At that time, the counsel was not representing Ms. Watson in any matter.

80.     The Defendants never personally notified Ms. Watson of the notice of non-renewal.

81.     The Defendants never provided Ms. Watson the reason for the non-renewal of her tenancy.

82.     Defendants' counsel courtesy copied Cindy Arnold on the letter.

**Retaliation: March 19, 2019 Lease Violation**

83.     The date of the third Wednesday in March 2019 was March 20, 2019.

84.     On Tuesday, March 19, 2019, Ms. Watson attempted to pay her rent a day early because she had appointments the following day.

85.     She did not want to risk being late paying her rent, since she received the previous lease violation for paying her rent at 4:38 p.m. on the third Wednesday of the month.

86.     No one was in the office that day. So, Ms. Watson's friend, and fellow tenant, drove her to Ms. Arnold's home to deliver the payment.

87.     Ms. Hussey delivered the payment to Cindy Arnold on Ms. Watson's behalf.

88.     At first, Cindy Arnold refused to accept the payment, but she eventually accepted the payment.

89.     Ms. Watson received a lease violation dated March 19, 2019, which Amanda Gresham signed.

90.     The Notice of Lease Violation read,

The specific violation(s) is/are: <u>Rent was taken to a manager's home at 2045 on 03/19/2019.</u>

The paragraph(s) in your Lease you which has been violated is/are: <u>Amended Lease paragraph detailing how and when rent is to be paid for apartment #16</u>.

In order to correct this violation(s) you must take the following action: <u>Ms. Watson is to bring her rent to the rec. center office before 1630 on the third Wednesday of each month. House calls are never permitted</u>.

91.     Upon information and belief, Ms. Hussey did not receive a lease violation for driving Ms. Watson to Arnold's house or delivering the payment.

92.     On March 25, 2019, after issuing the lease violation to Ms. Watson, Amanda Gresham issued a notice to the community that communicated to the tenants, *inter alia,* the monthly rent process.

93.     Amanda Gresham's monthly rent process read,

Rent is due on the third of each month, and is to be received no later than the tenth of the month, unless otherwise noted. Each tenant will bring the monthly rent and each television check to the site manager's office and be given a receipt for the payment. Payment is only to be made in the form of a cashier's check, personal check, or money order. No cash payments will be accepted. No checks will be accepted in the mail or hand delivered to a personal residence.

94.     The written lease authorizes tenants to deliver notices to the landlord by certified mail if the tenant is not able to personally hand deliver notices to the landlord.

95.     Amanda Gresham did require the tenants to  agree in writing to the changed policy for delivery of notices to the landlord.

96.     Ms. Watson did not otherwise agree to the policy change.

**Ms. Watson's Housing Discrimination complaint to the United States Department of Housing and Urban Development.**

97.     In or around April 2019, because of the Defendants' conduct surrounding her request for a reasonable accommodation and the ensuing retaliation, Ms. Watson filed a complaint for housing discrimination with the United States Department of Housing and Urban Development ("HUD").

98.     Ms. Watson dismissed the HUD Complaint after filing this action.

99.     The Defendants knew about the HUD complaint since April or May 2019.

**Retaliation: April 22, 2019 Lease Violation**

100.    The lease addendum reads, "17. Notices. All required or allowed notices, may be served by hand delivery by Resident to Owner…If service cannot be made on the Owner personally, the notice shall be mailed to the Owner by certified mail."

101.    The date of the third Wednesday in April 2019 was April 17, 2019.

102.    On April 17, 2019, Ms. Watson attempted to pay her rent at the rec. center, but no one was in the office.

103.    On April 17, 2019, Ms. Watson took the rent money order to her local Legal Aid office to have the payment mailed by her counsel, which was sent by certified mail.

104.    On April 22, 2019, Amanda Gresham issued a Notice of Lease Violation to Arleta Watson.

105.    The Notice of Lease Violation read:

The specific violation(s) is/are: <u>Rent was mailed from the legal aid office and arrived 4/22/2019, being late by five days.</u>

The paragraph(s) in your Lease you which has been violated is/are: <u>Amended Lease paragraph detailing how and when rent is to be paid for apartment #16</u>.

In order to correct this violation(s) you must take the following action: <u>Ms. Watson is to bring her rent to the rec. center office before 1630 on the third Wednesday of each month.</u>

106.    The lease authorizes tenants to send notices to the Defendants by certified mail when the Defendants cannot be personally served.

107.    The Amended Lease did not prohibit the mailing of the rent payment to the Defendants by certified mail if the Defendants could not be personally paid.

**Retaliation: April 23, 2019 Lease violation for driving on the grass**

108.    On April 30, 2018, Ms. Watson signed the Defendants' Vici occupancy rules and regulations.

109.    The copy of the Occupancy Rules that Ms. Watson signed did not mention any rule prohibiting tenants from driving on the grass.

110.    The lease did not prohibit tenants from driving on the grass.

111.    On April 23, 2019, at around 8:00 P.M. Ms. McAdoo asked Ms. Watson to accompany her on some errands.

112.   Ms. Watson wore a knee brace during that time and had difficulties walking.

113.   Ms. McAdoo pulled up on the grass and dirt, behind the apartments, near her door so that Ms. Watson would not have to walk very far.

114.   Ms. Watson did not ask Ms. McAdoo to pull up on the grass and dirt near her door so that she would not have to walk very far.

115.   Ms. Watson warned Ms. McAdoo that she was not supposed to drive on the grass.

116.   Ms. McAdoo did not drive on the grass when she returned Ms. Watson to her home but instead parked in the parking lot.

117.   On April 23, 2019, around 8:45 pm, Ms. Gresham issued a notice of lease violation to Ms. Watson for driving on the grass.

118.    The Notice of Lease Violation read:

The specific violation(s) is/are: <u>Driving on grass in front of apartment.</u>

The paragraph(s) in your Lease you which has been violated is/are: <u>#14 Residents Duties &#4 on Occupancy Rules and Regulations</u>.

In order to correct this violation(s) you must take the following action: <u>Stop driving on grass</u>."

119.   Ms. Gresham knew that Ms. Watson was not driving on the grass.

120.   Ms. Gresham knew that Ms. McAdoo was driving the car.

121.   The Defendants stated that they issued the lease violation to Ms. Watson because she failed to control her guest.

122.   When the Defendants issued the lease violation to Ms. Watson, they knew that Ms. McAdoo was their tenant and not a guest of Ms. Watson.

123.   The Defendants also issued a notice of lease violation to Ms. McAdoo for driving on the grass.

124.   Other tenants regularly drive and park on the grass without penalty.

**Retaliation: May 1, 2019 Letter to Counsel**

125.   On May 1, 2019, Vici's counsel sent a letter to the Plaintiff's counsel which read:

Counsel:

As previously advised, Ms. Watson's lease is not being renewed and she will need to have the apartment vacated, cleaned and keys turned over to the landlord by May 31, 2019. There will be no requests for extensions granted.

126.   Vici's counsel sent and delivered a copy of the letter to Arnold.

**Retaliation: May 15, 2019 Lease Violation**

127.   The date of the third Wednesday in May 2019 was May 15, 2019.

128.   Because of her mobility issues, which were exacerbated by the rocky gravel walkway, Ms. Watson asked another individual, Melissa Huddleston, to take her rent payment to the rec. center on May 15, 2019.

129.   Ms. Huddleston delivered Ms. Watson's rent payment to the rec. center at 3:22 P.M. on May 15, 2019.

130.   Amanda Gresham issued a Notice of Lease Violation to Ms. Watson on May 15, 2019.

131.   Ms. Gresham clearly just drafted the May 15th violation over the April 22nd violation because the notice still had the date 4-22-2019 on its face.

132.   The Notice of Lease Violation read:

The specific violation(s) is/are: <u>Rent was hand-delivered by Melissa Huddleston in the rec. center office on 3-15-2019 at 3:22 PM.</u>

The paragraph(s) in your Lease you which has been violated is/are: <u>Amended Lease paragraph detailing how and when rent is to be paid for apartment #16</u>.

In order to correct this violation(s) you must take the following action: <u>Ms. Watson is to bring her own rent to the rec. center office before 1630 on the third Wednesday of each month.</u>

133.   Other tenants are permitted to have other individuals to deliver their rent payments without penalty.

**Retaliation: May 29, 2019 Lease Violation**

134.   On May 29, 2019, the Defendants conducted a monthly inspection.

135.   Ms. Watson did not receive written notice of the monthly apartment inspection, and she did not allow the inspectors into her unit.

136.   On May 29, 2019, Amanda Gresham issued a notice of lease violation to Ms. Watson.

137.   The Notice read:

The specific violation(s) is/are: <u>Refusing to participate in a mandatory monthly apartment inspection</u>.

The paragraph(s) in your Lease you which has been violated is/are: <u>Occupancy Rules and Regulations #8:s signed at the time of occupancy," And Lease Addendum #11, (A): "Repairmen, servicemen, or Owner's representatives may enter the apartment at reasonable times for regular checking and servicing of equipment and systems, and regular monthly periodic inspections. This entry will be on a scheduled basis, with notice of such schedule to be posted in the laundry room and at each mailbox area. Entry for purposes will require at least a twenty-four (24) hour notice, but not more than seven (7) days notice."</u>

In order to correct this violation(s) you must take the following action: <u>Allow inspection to be completed June 3, 2019 beginning at 3:30 P.M.</u>.

134.    After receiving proper notice, Ms. Watson permitted the inspection.

## Retaliation: First Forcible Entry and Detainer Action

135.    On June 6, 2019, Vici Manor filed an eviction action for possession only in the Dewey County District Court, Case No. **SC-2019-14**.

136.    The case has been stayed but is set for review on September 15, 2020.

## Retaliation: Harassment with repeated notices during the COVID-19 Pandemic

137.    The policy and practice of the Defendants is to place notices of unit inspections near the mailbox area and in the rec room.

138.    Before COVID-19, Ms. Watson requested to have notices placed on her door due to her problems with walking.

139.    The Defendants accommodated the request.

140.    On March 30, 2020, Ms. Watson requested, as a reasonable accommodation, for the Defendants to except her from all non-emergency inspections during the COVID-19 pandemic because of her disabilities and because

she has been identified as a vulnerable person who has a heightened risk of contracting the coronavirus because of her age.

141.   The Defendants agreed not to conduct inspections on her unit or any unit during the pandemic.

142.   After agreeing not to conduct inspections in her unit, in accommodation of her disabilities, the Defendants repeatedly posted notices on Ms. Watson's door informing her that its agents would enter her unit to perform regular inspections.

143.   The Defendants issued the most recent notice on September 14, 2020 by leaving a copy of an inspection notice for Ms. Watson on her patio furniture under a rock.

144.   The notice informed Ms. Watson that the Defendants would enter her unit on the morning of September 15, 2020 to conduct an inspection.

145.   The Parties were scheduled to appear in court in Dewey County the afternoon of September 15, 2020.

146.   In its Brief in support of the eviction action, the Defendants claimed that the state district court should grant the eviction action, *inter alia*, Ms. Watson still refused to allow the Defendants to conduct inspections of her rental unit.

147.   Watson only refused to grant inspections for which she had no notice and during the pandemic. The relevant law supports both bases for denial of access.

28

148.    The Defendants' repeated posted notices, after Ms. Watson's requested accommodation to cease inspections during the pandemic, have caused Ms. Watson great anxiety and distress.

**Retaliation: Third Forcible Entry and Detainer Action after Ms. Arnold served as a witness in another housing discrimination case.**

149.    On June 5, 2019, Ms. McAdoo filed a complaint against the Defendants in the United States District Court for the Western District of Oklahoma.

150.    In her complaint, Ms. McAdoo made claims of disability-based discrimination in violation of her fair housing rights and other laws.

151.    In her case, Ms. McAdoo referenced her relationship with Ms. Watson and referenced the April 23, 2019 lease violation.

152.    Ms. Watson was a witness in the case and also gave a deposition in the case in support of Ms. McAdoo's claims.

153.    The matter was dismissed and appealed. The parties resolved the matter on appeal at the end of July 2020.

154.    Vici dismissed its eviction action against McAdoo in August 2020.

155.    On August 24, 2020, Cindy Arnold filed a third eviction action against Ms. Watson in Dewey County. **Dewey County District Court Case No. SC-2020-14.**

156.    In the Affidavit, Cindy Arnold, on behalf of Vici, stated that she demanded rent from Ms. Watson before initiating the forcible entry and detainer

action against Ms. Watson and that Ms. Watson refused to pay the rent or any part of it.

157.   On the same day that Cindy Arnold served Ms. Watson with the Summons for the forcible entry and detainer action, she served her with an Oklahoma Immediate Notice to Quit, In Accordance with § 132 (C) and (D).

158.   The notice read,

### OKLAHOMA IMMEDIATE NOTICE TO QUIT

IN ACCORDANCE WITH § 132(C) and (D)

In the District of DEWEY _____ County, Oklahoma

TO: ARLETA WATSON _____ (TENANT IN POSSESSION)

You will take notice that you are justly in violation of your lease agreement due to the following:

For violation of the lease described as; failure to comply with rules and regulations of complex;

Under Oklahoma law, you are required to vacate the premises **IMMEDIATELY** due to the above-stated violation. If you do not leave the property the landlord will file a forcible entry and detainer action.

This document has been dated this 24 day of AUGUST , 20 20 .

Cindy Arnold

Landlord (Signature)

CINDY ARNOLD _____

Landlord (Print Name)

159.   Arleta Watson did not receive any notices of lease violations from June 1, 2019 through August 24, 2020.

160.   Neither Cindy Arnold nor Vici served any notices demanding the payment of rent to Arleta Watson from May 2019 through August 24, 2020.

161.   The Defendants have refused to recertify Ms. Watson for housing since 2019 or to accept any rent from her.

162.    That matter was set for hearing on September 15, 2020, but it has been continued until October 20, 2020.

## INJURY TO THE PLAINTIFF

163.    As a result of the Defendants' actions as described above, the Plaintiff suffered and continues to suffer irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities because of her disabilities, and her association with other persons with disabilities. She has suffered harm in excess of $100,000.

164.    By engaging in the unlawful conduct described above, the Defendants acted intentionally and maliciously with callous and reckless disregard of the federally and statutorily protected rights of the Plaintiff.

## COUNT I

### *Violations of the Fair Housing Act, 42 U.S.C. § 3604 (c)*

165.    The Plaintiff repeats her assertions of facts contained in paragraphs 1 through 164 above as if fully set forth herein.

166.    Under the Fair Housing Act of 1968, as amended, **42 USC § 3604 (c)**, the Defendants' actions alleged above constitute prohibited statements of discrimination on the basis of disability.

## COUNT 2

*Violation of 42 U.S.C.A. § 3604 (f) (1) (A) and (C), (2) (A) and (C), and (3) (B).*

167.   The Plaintiff repeats her assertions in paragraphs 1 through 164 above as if fully set forth herein.

168.   Under the Fair Housing Act of 1968, as amended, **42 USC § 3604 (f) (1) (A)** and **(C), (2) (A)** and **(C)**, and **(3) (B)**, the Defendants' actions alleged above constitute prohibited discrimination on the basis of disability.

## COUNT 3

### *Violation of the 42 U.S.C. § 3617*

169.   The Plaintiff repeats all previous assertions as raised in paragraphs 1 through 164 as if set fully set forth herein.

170.   Under the Fair Housing Act of 1968, as amended, the Defendants' actions, alleged above constitute prohibited retaliation on the basis of disability.

## COUNT 4

*Violations of the Oklahoma Discrimination in Housing Act, 25 Okla. Stat. Ann.*
*§§ 1452 (A) (1), (3), (16) (b), and 1601 (1).*

171.   The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1 through 164 as if set out fully herein.

172.   Under the Oklahoma Discrimination in Housing Act, **25 Okla. Stat. Ann. §§ 1452 (A) (1), (3), (16) (b), and 1601 (1)**, the Defendants' actions alleged above, constitute prohibited discrimination on the basis of disability.

## COUNT 5

### *Violation of the Rehabilitation Act of 1973, Section 504*

173.   The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1-164.

174.   Under the Rehabilitation Act of 1973, Section 504, the Defendants' actions alleged above, constitute prohibited discrimination on the basis of disability.

## COUNT 6

### Declaratory Judgment

### *Violations of the CARES Act, 7 C.F.R. §§ 3560.159 and 3560.160, and the Oklahoma Residential Landlord and Tenant Act, 41 O.S. § 101, et seq.*

175.   The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1-164.

176.   **7 C.F.R. § 3560.159 (b) (1)-(3)** provides:

(b) Lease expiration or tenant eligibility. A tenant's occupancy in an Agency-financed housing project may not be terminated by a borrower when the lease agreement expires unless the tenant's actions meet the conditions described in paragraph (a) of this section, or the tenant is no longer eligible for occupancy in the housing. Borrowers must handle terminations of occupancy due to a change in tenant eligibility status in accordance with § 3560.158. At a minimum, the occupancy termination notice must include the following information:

(1) A specific date by which lease termination will occur;

(2) A statement of the basis for lease termination with specific reference to the provisions of the lease or occupancy rules that, in the borrower's judgment, have been violated by the tenant in a manner constituting material non-compliance or good cause; and

(3) A statement explaining the conditions under which the borrower may initiate judicial action to enforce the lease termination notice.

**7 C.F.R. § 3560.159**

177.   **7 C.F.R. § 3560.160 (e)** reads,

(e) Notice of adverse action. In the case of a proposed action that may have adverse consequences for tenants or prospective tenants such as denial of admission to occupancy and changes in the occupancy rules or lease, the borrower must notify the tenant or prospective tenant in writing. In the case of a Borrower's proposed adverse action including denial of admission to occupancy, the Borrower shall notify the applicant/tenant in writing. The notice must be delivered by certified mail return receipt requested, or a hand-delivered letter with a signed and dated acknowledgement of receipt from the applicant/tenant. The notice must give specific reasons for the proposed action. The notice must also advise the tenant or prospective tenant of "the right to respond to the notice within ten calendar days after date of the notice" and of "the right to a hearing in accordance with § 3560.160 (f), which is available upon request." The notice must contain the information specified in paragraph (a)(2) of this section. For housing projects in areas with a concentration of non–English speaking individuals, the notice must be in English and the non–English language.

**7 C.F.R. § 3560.160**

178.   The **CARES Act, 15 USC § 9058**, in relevant part, provides:

TEMPORARY MORATORIUM ON EVICTION FILINGS.

 (a) Definitions.--In this section:
   (1) Covered dwelling.--The term ``covered dwelling'' means a
   dwelling that--
       (A) is occupied by a tenant--
           (i) pursuant to a residential lease; or
           (ii) without a lease or with a lease terminable under State law;
and
       (B) is on or in a covered property.
     (2) Covered property.--The term ``covered property'' means
   any property that--
       (A) participates in…

(ii) the rural housing voucher program under section 542 of the Housing Act of 1949 (42 U.S.C. 1490r);
  (3) Dwelling.--The term ``dwelling"--
    (A) has the meaning given the term in section 802 of the Fair Housing Act (42 U.S.C. 3602); and
    (B) includes houses and dwellings described in section 803(b) of such Act (42 U.S.C. 3603(b)).
  (c) Notice.--The lessor of a covered dwelling unit--
    (1) may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate; and
    (2) may not issue a notice to vacate under paragraph (1) until after the expiration of the period described in subsection (b).

179.   The **Oklahoma Residential Landlord and Tenant Act, 41 O.S. § 131 (B)** states, in pertinent part, "B. A landlord may terminate a rental agreement for failure to pay rent when due, if the tenant fails to pay the rent within five (5) days after written notice of landlord's demand for payment..."

180.   The Defendants' written notices of non-renewal and notice of lease termination did not comply with the minimum requirements of **7 C.F.R. §§ 3560.159 (b)** for the following reasons:

a.  The written notices of nonrenewal did not state that Ms. Watson was ineligible for housing at the expiration of her 2018 lease.

b.  The written notices of nonrenewal did not state a good cause basis for the nonrenewal of Ms. Watson's lease.

c.  The written notices of nonrenewal and the Oklahoma Immediate Lease termination notice did not include a statement of the basis for lease termination with

specific reference to the provisions of the lease or occupancy rules that, in the Defendants' judgment, had been violated by the tenant in a manner constituting material non-compliance or good cause.

    d.  The written notices of nonrenewal and the Oklahoma Immediate Lease termination notice did not include a statement explaining the conditions under which the Defendants would initiate judicial action to enforce the lease termination notice.

181.  The Defendants' attempts to not renew and to terminate Ms. Watson's tenancy is an adverse action by the landlord that triggered rights and duties under **7 C.F.R. § 3560.160 (e)**.

182.  The Defendants did not comply with **7 C.F.R. § 3560.160 (e)** for the following reasons:

    a.  The Defendants did not notify Ms. Watson of its proposed adverse action, in a writing, delivered to **<u>her</u>** by certified mail with return receipt requested, or a hand-delivered letter with a signed and dated acknowledgement of receipt from Ms. Watson.

    b.  The notices did not give specific reasons for the Defendants' proposed adverse action.

    c.  The notices did not inform Ms. Watson of the right to respond to the notice within ten calendar days after the date of the notice and the right to a hearing in accordance with **§ 3560.160 (f)**.

183.   The written notices of nonrenewal and the notice of immediate lease termination were insufficient, as a matter of law, to terminate Ms. Watson's tenancy.

184.   The Defendants did not comply with the **CARES Act** because they did not issue the mandatory thirty-day written notice to pay or to vacate that gave Ms. Watson an opportunity to pay or leave prior to the filing of an eviction action.

185.   Because the Defendants did not issue a thirty-day written notice to quit or pay to Ms. Watson, the Defendants did not terminate Ms. Watson's tenancy.

186.   The Defendants' action, in which they filed the eviction action for rent, without providing Ms. Watson with a prior thirty-day written notice, violated the **CARES Act**.

187.   The Defendants' action of filing an action for possession, based upon rent, without demanding payment of rent and giving the Plaintiff at least five days to cure any delinquency also violated the **Oklahoma Residential Landlord and Tenant Act**.

188.   An actual case and controversy exists between the Parties for the following reasons:

   a. The Plaintiff contends that, due to the Defendants' willful noncompliance with the herein cited regulations and statutes, her tenancy never terminated and continues to be a valid tenancy to date.

b.  The Plaintiff contends that, due to the Defendants' willful noncompliance with the herein cited regulations and statutes, the Defendants had and have a duty to recertify her for housing.

c.  The Plaintiff contends that the Defendants' demands for possession of her unit are unlawful.

d.  The Plaintiff contends that she is only required to pay $309 monthly for rent because the Defendants willfully and without cause, refused and continue to refuse to recertify her for housing.

e.  The Plaintiff contends that the Defendants' practice of rejecting her proper monthly tender of rent from June 2019 through the present is unlawful.

f.  The Plaintiff contends that, since the property is a **CARES Act** covered property, the Defendants must serve her with a written thirty-day notice demanding the payment of rent and then give her an opportunity to cure before initiating an action in court.

g.  The Plaintiff further contends that the Defendants' failure to issue the **CARES Act** notice to quit or vacate deprives the Defendants of the remedy of possession under the **Oklahoma Residential Landlord and Tenant Act** as well.

189.    Because of this controversy, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist among the parties.

## COUNT 7

### *Breach of Contract*

190.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1-164.

191.    The Defendants' actions alleged above, constitute breaches of contract since both the USDA and the lease prohibit the actions alleged above.

## COUNT 8

### *Violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751, et seq.*

192.    The Plaintiff repleads and incorporates all previous assertions set forth above in paragraphs 1-161.

193.    The **Oklahoma Consumer Protection Act, 15 O.S. § 752 (1)** defines a person as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity."

194.    The **Oklahoma Consumer Protection Act, 15 O.S. § 752 (2)** defines a consumer transaction as, "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real,

personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."

195.   The Defendant Vici is the contracting party to the lease agreement of the Plaintiff.

196.   The Defendant Vici owns and operates the Vici Manor Apartments in which the Plaintiff lives.

197.   The Defendant Cindy Arnold, as an agent of the Defendant Vici, manages the Vici Manor Apartments.

198.   The terms of the lease only permit the Defendants to refuse to renew a tenancy for limited reasons which were not present in this case.

199.   The Defendants knew or should have known that they lacked a basis to support their decision to not renew the tenancy of the Plaintiff.

200.   The Defendants knew or should have known that they did not have a legal basis to demand possession of the Plaintiff's rental unit via the court process or otherwise.

201.   The Defendants knew or should have known that they did not have a legal basis to seek a judgment for rent against the Plaintiff.

202.   The Defendants knew that when they issued the Oklahoma Immediate Termination Notice that the Plaintiff had in fact not engaged in any conduct that violated the lease or the occupancy rules.

203.    Pursuant to the **Oklahoma Consumer Protection Act, 15 O.S. § 753 (20)**, "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person: 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title."

204.    The **Oklahoma Consumer Protection Act, 15 O.S. § 752 (13)** defines a Deceptive Trade Practice as, "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral."

205.    The **Oklahoma Consumer Protection Act, 15 O.S. § 752 (14)** defines an Unfair Trade Practice as, "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

206.    The Defendants violated the **Oklahoma Consumer Protection Act** by issuing unlawful, unfair, and deceptive nonrenewal and termination notices. The Defendants did so with the expectation of misleading and forcing the Plaintiff to vacate her unit at the expiration of her 2018 lease, to her detriment. The intended result was that the Plaintiff would lose her housing, housing assistance, and become homeless.

207. The Defendants violated the **Oklahoma Consumer Protection Act** by unfairly and deceptively filing court process to have the Plaintiff removed from a dwelling of which she is a lawful tenant. The Defendants' conduct was misleading, immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Plaintiff.

208. The Defendants violated the **Oklahoma Consumer Protection Act** by unfairly and deceptively filing court process against the Plaintiff to obtain a judgment for rent and court costs. The Plaintiff tendered rent each month, and the Defendants refused repeatedly to accept it. The Defendants' conduct was deceptive, immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Plaintiff.

209. The Defendants' refusal to accept the Plaintiff's rent so that they could file an eviction action against her on the basis of nonpayment of rent was also an unfair and deceptive trade practice that began in June 2019 and continues. Each separate tender rejection was wrongful and unlawful and must be construed as separate occurrences that violate the **Oklahoma Consumer Protection Act** as an unfair and deceptive trade practice.

210. The conduct of the Defendants is unconscionable, as a matter of law, because  the Defendants knowingly or with reason to know, took advantage of a Ms. Watson, a consumer reasonably unable to protect her interests because of her age,

physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar fact. 15 O.S. § 761.1 (B).

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays:

A.     That the Court enter its judgment declaring the actions of the Defendants complained of herein to be in violation of the USDA regulations, **7 C.F.R. § 3560, et seq.**, the **CARES Act**, and **the Oklahoma Residential Landlord and Tenant Act**;

B.     That the Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of are not engaged in again by them or any of their agents;

C.     That the Court find that the Defendants have violated Fair Housing Act and the Oklahoma Housing in Discrimination Act as prayed above.

D.     That the Court find that the Defendants have violated the Rehabilitation Act of 1973 as set forth above.

E.     That the Court find that the Defendants, through their actions, have breached their contract with the Plaintiff.

F.     That the Defendants, their agents, employees, and successors be permanently enjoined from discriminating on the basis of handicapped status against any person in violation of the Fair Housing Act of 1968, as amended, the

Rehabilitation Act of 1973, Section 504, and the Oklahoma Housing in Discrimination Act;

G.      That the Defendants be ordered to complete the recertification process for the Plaintiff;

H.      That appropriate compensatory, statutory, and punitive damages be awarded to the Plaintiff in an amount appropriate to proof at trial;

I.      That the Court find that the Defendants violated the Oklahoma Consumer Protection Act, that such conduct was unconscionable, and award the statutorily permitted civil penalties to the Plaintiff in an amount not less than $2,000 per occurrence.

J.      That the Plaintiff be awarded her costs and reasonable attorneys' fees in this action; and

K.      That the Plaintiff be awarded such other and further relief that the Court deems just and proper.

**JURY TRIAL DEMANDED**

Trial by Jury is demanded on all issues.

Dated: January 11, 2021

Respectfully submitted,

*Attorney for the Plaintiff,*
*Ms. Arleta Watson*

s/ Teressa L. Webster_____
Teressa L. Webster OBA #30767
LEGAL AID SERVICES OF OKLAHOMA, INC.
530 Court Street
Muskogee, Oklahoma 74401
Telephone:   (918) 683-5681
Facsimile:   (918) 683-5690
Email:       Teressa.Webster@laok.org

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January 2021, I served a true and correct copy of the foregoing Amended Complaint on the Defendants by serving a copy said copy on their Counsel of record through this Court electronic filing case management system:

Ms. Lindsay Kistler: lkistler@hallestill.com
Ms. Elaine Turner: eturner@hallestill.com

s/ Teressa L. Webster_____
Teressa L. Webster OBA #30767