**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

ARLETA WATSON,                              )
                                            )
    Plaintiff,                          )
                                            )
-vs-                                        )    Case No. CIV-20-1011-F
                                            )
VICI COMMUNITY DEVELOPMENT                  )
CORP. and CINDY ARNOLD,                     )
                                            )
    Defendants.                         )

## ORDER

    Defendants Vici Community Development Corporation (Vici) and Cindy Arnold (Arnold) move to dismiss each of the claims contained in the First Amended Complaint. Doc. no. 20. The motion is brought under Rule 12(b)(6), Fed. R. Civ. P. Plaintiff Arleta Watson (Watson) responded, objecting to dismissal of her claims. Doc. no. 21. Vici and Arnold filed a reply brief. Doc. no. 24.

    Watson is a tenant at Vici Manor Apartments, a sixteen-unit housing complex in Vici, Oklahoma. Vici is the owner of Vici Manor Apartments. Arnold serves the apartments as property manager.

    Watson brings this action alleging that Vici and Arnold violated state and federal laws in relation to her, a disabled tenant. In the First Amended Complaint, Watson alleges claims under the CARES Act, 15 U.S.C. § 9058, and the United States Department of Agriculture, Rural Development Division, Multifamily Housing Regulations, 7 C.F.R. §§ 3560 *et seq*. Watson seeks damages and injunctive relief under the Fair Housing Act and the Fair Housing Amendments Act, 42 U.S.C. §§ 3601-19; the Oklahoma Discrimination in Housing Act, 25 O.S. §§ 1451 *et seq*.; the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. § 794(a); the

Oklahoma Residential Landlord and Tenant Act, 41 O.S. §§ 101 *et seq.*; and the Oklahoma Consumer Protection Act, 15 O.S. §§751 *et seq.*  Watson also seeks damages based upon common law breach of contract.

Rule 12(b)(6), Fed. R. Civ. P.

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  To survive a motion to dismiss, a plaintiff must nudge her claims across the line from conceivable to plausible.  *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  at 679.

## Pertinent Allegations

The First Amended Complaint alleges:

-- Vici receives funding from the United States Department of Agriculture's Rural Development Division (USDA), a federal agency, to provide rental assistance and housing to low-income individuals (doc. no. 18, ¶ 21);

-- Watson and defendants entered into a lease agreement for federally assisted housing in 2014, and the agreement requires defendants to follow federal and state laws (*id*. at ¶ 26);

-- Watson, who is 79 years old, has resided at Vici Manor Apartments since 2014 (*id*. at ¶¶ 20, 23);

-- Watson has permanent mobility issues due to knee impairments and has other physical and mental impairments; she relies on a walker and a cane to assist with walking, support, and balance  (*id*. at ¶¶ 24, 28);

-- Watson presented Arnold a physician's letter establishing her mobility issues, at the beginning of her tenancy in 2014 (*id*. at ¶ 25);

 -- Watson cannot work because of her disabilities, and her age-related social security benefits, of a little more than $1,000, are her only source of income (*id*. at ¶¶ 34, 35);

-- When Watson applied for housing, she told defendants her sole income derived from social security benefits and she did not receive those benefits until the third week of each month, leaving her unable to pay rent until after their receipt (*id*. at ¶¶ 36, 37);

-- Arnold granted Watson's verbal request to pay her rent on the third week of the month; rent was to be paid the third Wednesday of each month (herein: "third Wednesday payment privilege"); Arnold allowed other tenants to pay their rent upon receipt of their public benefits (*id*. at ¶¶ 38, 39, 40);

-- At a meeting of residents in April 2018, and then to the USDA, Watson complained of lack of maintenance of the complex; Arnold's husband was the maintenance man (*id.* at ¶¶ 43, 44);

-- On June 8, 2018, Arnold filed a forcible entry and detainer action in Dewey County District Court against Watson.  Arnold sought to recover rent allegedly due for several years (*id.* at ¶ 44);

-- On July 5, 2018, the state court denied the claim for unpaid rent, stating Vici had waived its right to rent; Vici did not timely appeal the decision (*id.* at ¶¶ 45, 46);

-- In September 2018, Arnold again sought possession of Watson's apartment unit, claiming Watson had violated the court's order by not paying rent as directed; the state court denied the request (*id.* at ¶ 47);

-- Arnold, without written notice, rescinded Watson's third Wednesday payment privilege (*id.* at ¶ 48);

-- In October 2018, Arnold issued to Watson a notice of lease violation, alleging lease violations purportedly discovered during inspections conducted in July and August of 2018; Watson, through counsel, denied the alleged violations and disputed the timeliness of the notice (*id.* at ¶¶ 49, 50);

-- On November 2, 2018, Watson, by counsel, made a written request for reinstatement of the third Wednesday payment privilege; to support the request, a sworn doctor statement verifying Watson's permanent limited mobility was provided (*id.* at ¶¶ 51, 52);

-- On November 13, 2018, defendants, by counsel, acknowledged receipt of the request and requested proof of disability and government benefits; that same day, Arnold delivered to Watson a notice of lease violation for past due rent, demanding a $10 late fee penalty (*id.* at ¶¶ 54, 57);

-- Watson's counsel forwarded documents to defendants' counsel showing proof of disability and government benefits on November 19, 2019 (*id*. at ¶ 58);

-- On December 28, 2018, Watson, by counsel, made a second written request for the third Wednesday payment privilege (*id*. at ¶ 60);

-- On January 11, 2019, defendants, by written notice from their counsel, agreed to allow Watson to pay her rent the third Wednesday of the month  (*id*. at ¶ 61);

-- In the written notice, defendants' counsel wrote, "As we have told you in the past the claims and allegations that your client is disabled is false . . . My client does not agree that your client is disabled . . . ."  Arnold made statements that Watson was not disabled (*id*. at ¶¶ 62, 22);

-- In the written notice, defendants agreed that Watson, or someone on her behalf, would pay the rent on the third Wednesday of each month by 4:30 p.m., but advised if Watson was "even one minute late" paying her rent, defendants would enforce the lease (*id*. at ¶¶ 63, 64);

-- Watson, by counsel, rejected the "one-minute late" term as a different term and condition of rental since other tenants are not subjected to the term; no "one-minute late" term was included in the amended lease (*id*. at ¶¶ 65, 66);

--  The parties executed an amended lease which provided in part "Landlord will accept payment one time a month for the full amount of rent at the front office by 4:30 p.m., on the 3rd Wednesday of each month" and "[in] the event that the tenant breaches that agreement, she will be considered in default of this lease and all opportunities rendered to such landlord due to said default applies" and "[a]ll terms and conditions of the previous lease agreement signed by Ms. Watson applies [sic]" (*id*. at ¶ 68);

-- On February 20, 2019, the third Wednesday of the month, Watson, who was in another town on business, called to inform defendants that "she would be there

just after 4:30 p.m." to pay her rent; Watson arrived at the office at 4:38 p.m. and her friend tendered the rent payment for her (*id*. at ¶ 73);

    -- That same day, Amanda Gresham, site manager for Vici Manor Apartments who worked closely with Arnold, issued to Watson a notice of lease violation for "rent brought in late by Ms. Yvonne Hussey. Rent [] received at 1638 on 02-20-2019" and to correct the violation, Watson must "bring her rent to the [recreation] center office before 1630 on the third Wednesday of each month" (*id*. at ¶ 74);

    -- On March 1, 2019, defendants, by counsel, sent notice to Watson's then former counsel, advising that Vici was not renewing Watson's lease when it expired, and she was to vacate her apartment by May 31, 2019; no reason was provided for non-renewal; defendants did not personally notify Watson of the nonrenewal (*id*. at ¶¶ 78, 80);

    -- On March 19, 2019, Watson attempted to pay her rent, which was due on March 20, 2019, but no one was in the office; Watson had appointments on March 20, 2019 and to avoid her rent being late, she had her friend, Yvonne Hussey, drive her to Arnold's home and deliver the payment for her; Arnold initially refused the payment but then accepted it (*id*. at ¶¶ 84-88);

    -- Gresham issued to Watson a notice of lease violation dated March 19, 2019 for "Rent [] taken to a manager's home at 2045 on 03/19/2019" and to correct the violation Watson must "bring her rent to the [recreation] center office before 1630 on the third Wednesday of each month" and "[h]ouse calls are never permitted" (*id*. at ¶¶ 89, 90);

    -- On March 25, 2019, Gresham issued a notice to the community which stated in part "[e]ach tenant will bring the monthly rent . . . to the site manager's office" and  "[n]o checks will be accepted in the mail or hand delivered to a personal residence" (*id*. at ¶¶ 92, 93);

-- The written lease authorized delivery of notices to the landlord by certified mail if tenants were unable to personally hand deliver notices; Watson did not agree to any change of policy (*id*. at ¶¶ 94, 96);

-- In April 2019, Watson filed a housing discrimination complaint with the United States Department of Housing and Urban Development; defendants knew of the complaint in April or May of 2019; the complaint was dismissed with the filing of this action (*id*. at ¶¶ 97-99);

-- On April 17, 2019, Watson attempted to pay her rent at the recreation center, but no one was in the office; Watson took the rent payment to her local legal aid office and the rent payment was sent by certified mail (*id*. at ¶ 103);

-- On April 22, 2019, Gresham issued a notice of lease violation for "[r]ent [] mailed from the legal aid office and arrived 4/22/2019, being late by five days" and to correct violation, Watson must "bring her rent to the [recreation] office before 1630 on the third Wednesday of each month" (*id*. at ¶¶ 104, 105);

-- On April 23, 2019, Judy McAdoo (McAdoo), a tenant at Vici Manor Apartments, pulled her car up on the grass and dirt near Watson's apartment to pick up Watson; at the time, Watson was wearing a knee brace and having difficulty walking; Gresham issued to Watson a notice of lease violation for "[d]riving on grass in front of apartment" and to correct violation, "[s]top driving on grass;" notice was issued to Watson because she failed to control "her guest;" McAdoo was also issued a notice of lease violation; the lease and occupancy rules Watson signed did not prohibit tenants from driving on grass; other tenants drove and parked on the grass without penalty (*id*. at ¶¶ 109-113, 117-118, 121-122, 124);

-- On May 1, 2019, Vici's counsel sent a letter to Watson's counsel again advising that Watson's lease would not be renewed, and she would need to vacate the apartment by May 31, 2019 (*id*. at ¶ 125);

-- On May 15, 2019, Watson, who had difficulty navigating the rocky gravel pathway to the recreation center, asked Melissa Huddleston (Huddleston) to deliver her rent payment; Huddleston delivered it at 3:22 p.m.; Gresham issued a notice of lease violation, which had a date of "4-22-2019," for "[r]ent [] delivered by [] Huddleston in the [recreation] center office on [5]-15-2019 at 3:22 PM" and to correct violation, Watson must "bring her own rent to the [recreation] center before 1630 on the third Wednesday of each month;" other tenants were permitted to have individuals deliver their rent payments without penalty (*id*. at ¶¶ 127-133);

-- On May 29, 2019, after not allowing inspectors into her unit for a monthly inspection of which Watson had no written notice, Gresham issued to Watson a notice of lease violation for "[r]efusing to participate in a mandatory monthly apartment inspection" and to correct violation, Watson must "[a]llow inspection to be completed June 3, 2019 at 3:30 P.M.;" after receiving proper notice, Watson permitted the inspection (*id*. at ¶ 134, p. 27, ¶ 136, p. 26, ¶ 137, pp. 26-27);

-- On June 6, 2019, Vici filed a forcible entry and detainer action in Dewey County District Court against Watson; the case was stayed until September 2020 (*id*. at ¶¶ 135-136, p. 27);

-- On March 30, 2020, Watson requested defendants to except her from all non-emergency inspections during the COVID-19 pandemic; defendants agreed not to conduct inspections, but defendants continued to post notices on her door informing her that agents would enter her unit to perform regular inspections (*id*. at ¶¶ 140-142);

-- At a September 15, 2020 hearing in Dewey County District Court, defendants claimed Watson refused to allow defendants to conduct inspections on her rental unit (*id*. at ¶ 146);

-- On June 5, 2019, McAdoo filed a complaint in this court alleging disability-based discrimination in violation of her federal housing rights and other

laws; the complaint referenced McAdoo's relationship with Watson and the April 23, 2019 notice of lease violation; Watson gave deposition testimony in support of the claims; the case was dismissed, and the matter was resolved by the parties on appeal; Vici also dismissed its forcible entry and detainer action against McAdoo in August 2020 (*id.* at ¶¶ 149-154);

-- On August 24, 2020, Arnold filed a third forcible entry and detainer action in Dewey County District Court against Watson. Arnold stated in an affidavit that she had demanded rent from Watson before initiating the action and Watson had refused to pay rent or any part of it. Arnold served Watson with summons for the action and an Oklahoma Immediate Notice to Quit stating she was in violation of the lease for "failure to comply with rules and regulations of complex;" Watson received no notice of lease violations between June 1, 2019 and August 24, 2020; Watson received no notices demanding rent from May 2019 through August 24, 2020; defendants refused to recertify Watson for housing or accept any rent from her (*id.* at ¶¶ 155-161).

Analysis

1. <u>42 U.S.C. § 3604(c) Claim</u>

In Count 1 of the First Amended Complaint, Watson alleges a violation of the Fair Housing Act (FHA), as amended, 42 U.S.C. § 3601, *et seq.* Section 3604(c) makes it unlawful:

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement . . . with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

Defendants argue that Watson's pleading fails to state a plausible claim for relief under § 3604(c) because it sets forth no allegations of a statement by defendants made with respect to the "prospective sale or rental of an available dwelling." Doc. no. 20 (quoting Treece v. Perrier Condominium Owners Association, Inc., Civil Action No. 17-10153, 2019 WL 6464984, at *6 (E.D. La. Dec. 2, 2019)). Defendants acknowledge the pleading alleges they stated verbally, and in writing, that plaintiff's statements of disability were false. However, they argue there are no allegations as to who made the statements or when the statements were made in order to evaluate whether such statements were made with respect to the prospective rental of a unit. Further, they contend the amended pleading fails to articulate how these statements, which question the veracity of plaintiff's disability, indicate they have a preference based on a protected class in the rental of their apartment units.

Watson responds § 3604(c) applies to notices as well as statements and cites various authorities which have held the statute applies to notices and statements made after the initial rental of a dwelling. She asserts that the facts she alleges regarding defendants' statements, in response to her request to reinstate the third Wednesday payment privilege, and defendants' notices of lease violation requiring her to personally deliver rent payments, taken as true, support a § 3604(c) claim. Watson contends that the statements and notices constitute expressions of limitation and preference disfavoring her based upon her disability.

In reply, defendants acknowledge that § 3604(c) applies to notices and concede that it has been extended, in some jurisdictions, to include post-acquisition discrimination. However, they argue that Watson has not identified specific communications from them that indicate a preference based upon a protected status. Defendants contend the notices of lease violation only indicate that Watson failed to pay her rent on time. As to the statement made by their counsel in response to

Watson's reinstatement request, defendants argue that Watson has cited no authority to support a contention that § 3604(c) applies to a statement by counsel.  Defendants reiterate that, even if that section is applicable, the statement shows only that they doubted the veracity of Watson's statements and not a preference based upon a protected class.

Upon review, the court concludes that plaintiff has stated a plausible § 3604(c) claim.  Plaintiff must satisfy three elements to state a claim under § 3604(c):[1] (1) defendant made a statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of disability.  Corey v. Sec'y, U.S. Dept. of Housing & Urban Dev. ex rel. Walker, 719 F.3d 322, 326 (4th Cir. 2013).  Based upon defendants' reply, the first two elements do not appear to be in issue with respect to the alleged notices of lease violation.[2]  The issue is whether the language in the alleged notices indicate a preference, limitation, or discrimination on account of disability.

In determining whether the third element is met, courts use an "ordinary reader" or "ordinary listener" standard.  Corey, 719 F.3d at 326 (citing White v. U.S. Dept. of Housing and Development, 475 F.3d 898, 904 (7th Cir. 2007); United States v. Hunter, 459 F.2d 205, 215 (4th Cir. 1972)).  If the ordinary reader or ordinary listener would believe the statement suggests a preference, limitation, or discrimination based on disability, the statement is deemed discriminatory.  Id.  The

---

[1] "While the [Rule] 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim."  Khalik v. United States, 671 F.3d 1188, 1192 (10th Cir. 2012).

[2] Section 3604(c) applies to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling.  24 C.F.R. § 100.75(b).  Additionally, § 3604(c) protects not only prospective tenants, but existing ones as well.  Elliott v. Versa CIC, L.P., Case No. 16-cv-0288-BAS-AGS, 2019 WL 414499,  at *7 (S.D. Calif. Feb. 1, 2019).

ordinary listener or ordinary reader "is neither the most suspicious nor the most insensitive of our citizenry." White, 475 U.S. at 906 (quotation omitted).

Accepting the pertinent allegations as true and (importantly) viewing them in a light most favorable to Watson, the court concludes the language of the notices of lease violation in February[3] and May of 2019 suggests a preference, limitation, or discrimination based on disability. Defendants issued the notices in part because Watson, with known permanent mobility issues based on her knee impairments, had her rent payment delivered by third parties. In the February notice, defendants stated that Watson was required "to bring her rent," doc. no. 18, ¶ 74, and in the May 2019 notice, defendants stated that Watson was required "to bring her own rent," id. at ¶ 132. See, Soules v. HUD, 967 F.2d 817, 824 (2d Cir. 1992) ("That statements are not facially discriminatory, however, does not mean that they do not indicate an impermissible preference in the context in which they were made.")

The court also concludes that the factual allegations relating to the falsity of Watson's claim of disability, in seeking to reinstate the third Wednesday payment privilege, also are sufficient to state a § 3604(c) claim. See, e.g., Haynes v. Wilder Corp. of Delaware, 721 F. Supp. 2d 1218, 1227 (M.D. Fla. 2010) (alleged statements against wheelchair-using resident that she was not handicapped or disabled when requesting manager's assistance in opening door to leasing office precluded summary judgment on a section 3604(c) claim). Although the falsity statement was conveyed by counsel, the statement was made on defendants' behalf in responding

---

[3] In their motion, defendants assert the February notice was drafted but never delivered to Watson. Defendants, in support of their assertion, rely upon facts in their brief in the third eviction proceeding and request the court to take judicial notice of that proceeding. Although the court may take judicial notice of documents which are a matter of public record, it may only consider those documents "to show their contents, not to prove the truth of matters asserted therein." Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). The court therefore does not take judicial notice of any facts in defendants' brief. Further, the court notes that defendants do not contest the delivery of the notice of lease violation in May of 2019.

to Watson's reinstatement request, "[a]s *we* have told you in the past the claims and allegations that your client is disabled is false . . . *My client* does not agree that your client is disabled," doc. no. 18, ¶ 62 (emphasis added).   In addition, Watson has asserted that Arnold made statements that Watson was not disabled.  *See*, doc. no. 18, ¶ 22.   Accepting the pertinent allegations as true and viewing them in a light most favorable to Watson, the court concludes that the falsity statements by defendants suggest a preference or limitation with respect to the rental of a dwelling based on disability.   The court reaches this conclusion mindful that, even under Twombly and Iqbal, Rule 12(b)(6) does not authorize the court to read a plaintiff's allegations with an unsparingly gimlet eye.

2. 42 U.S.C. § 3604(f) Claim

Count 2 also alleges violation of the FHA.  Section 3604(f) makes it unlawful:

> [t]o discriminate in the . . . rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap of . . . that . . . renter . . . or any person associated with that . . . renter.

> [t]o discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of a handicap of . . . that person . . . or any person associated with that person.

> [to] refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. §§ 3604(f)(1)(A) and (C); (f)(2)(A) and (C); and (f)(3)(B).

Defendants contend that the amended pleading fails to state claims under § 3604(f)(1) and § 3604(f)(2) because it does not allege facts sufficient to demonstrate that their actions were taken because of Watson's handicap or because of McAdoo's handicap.   According to defendants, the alleged facts show their

actions were taken in response to Watson's failure to either (1) pay rent on time, (2) follow the rules and regulations in the complex, or (1) vacate the apartment after the lease expired.    As to the reasonable accommodation claim pursuant to § 3604(f)(3)(B), defendants assert that there is no logical connection between her alleged handicap and the request to pay her rent three weeks late.   In addition, defendants maintain that they reinstated the third Wednesday payment privilege, but Watson still failed to pay her rent as provided in the amended lease.

Watson responds that the factual allegations concerning the nonrenewal of her lease, accepted as true, state a claim under § 3604(f)(1)(A); the factual allegations regarding the commencement of the third eviction proceeding against her and the issuance of the notice of lease violation for driving on the grass, accepted as true, state a claim under § 3604(f)(1)(C) and § 3604(f)(2)(C); and the factual allegations relating to notices of lease violation for having rent delivered by a third party, accepted as true, state a claim under § 3604(f)(2)(A).   As to the § 3604(f)(3)(B) claim, Watson contends that the factual allegations regarding the termination of the third Wednesday payment privilege and the issuance of the notice of lease violations after reinstating that privilege, accepted as true, show a failure to reasonably accommodate.

 Accepting the pertinent allegations as true and viewing them in a light most favorable to Watson, the court concludes that she has stated plausible claims under § 3604(f)(1)(A) and § 3604(f)(2)(A).    To establish a prima facie case of discrimination under § 3604(f)(1)(A), a plaintiff must allege (1) she is handicapped; (2) she applied for and was qualified to rent an apartment unit; (3) she was denied the opportunity to rent the apartment unit, and (4) the housing opportunity remained available.   Shaw v. Cherokee Meadows, LP, 431 F. Supp. 3d 1336, 1346 (N.D. Okla. Dec. 30, 2019).   Even though typical § 3604(f)(1)(A) claims apply to those seeking to rent a dwelling, "the language of the statute is broad enough to encompass an

existing tenant who is denied access to [her] dwelling because of a handicap." Elmowitz v. Executive Towers at Lido, LLC, 571 F.Supp.2d 370, 375 (E.D.N.Y. 2008).

In her amended pleading, Watson alleges that she has permanent mobility issues due to knee impairments and is unable to work as a result;[4] defendants were aware of her physical impairment and inability to work; defendants non-renewed her lease without any reason; she had been a tenant of defendants since 2014 and was paying her rent and complying with the rules of the complex at the time of the non-renewal; the notices of lease violation issued by defendants prior to non-renewal were because of late payment of rent but she had made her reinstatement request, and because rent payments were made by others on her behalf due to her physical impairment; and Vici continues to own the apartments and participate in the USDA rental assistance program.  With these factual allegations, the court concludes Watson has plausibly alleged that defendants have otherwise made unavailable or denied a dwelling because of handicap.

As to the § 3604(f)(2)(A) claim, Watson alleges that she received notices of lease violation, including the May 2019 notice of lease violation, for having a third party deliver her rent because of her physical impairment, whereas defendants allowed other tenants to pay rent by a third party; and she received a notice of lease violation for McAdoo driving on the grass to pick her up by her apartment because of her physical impairment, whereas defendants allowed other tenants to drive on the grass without penalty and the lease and occupancy rules she signed did not prohibit tenants driving on the grass.  Accepting the pertinent allegations as true and

---

[4] According to the FHA, a "handicap" is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment."  42 U.S.C. § 3602(h).  Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  24 C.F.R. § 100.201.

viewing them in a light most favorable to Watson, the court concludes that Watson has alleged a plausible claim under § 3604(f)(2)(A) of defendants' discriminating in the "terms, conditions, or privileges" of the rental of a dwelling because of Watson's handicap.

The court, however, concludes that the pertinent allegations do not state plausible claims under § 3604(f)(1)(C) and § 3604(f)(2)(C). Although Watson alleges receipt of the notice of lease violation for McAdoo driving on the grass and the commencement of the third eviction proceeding against her after the dismissal of McAdoo's disability-based lawsuit, for which Watson provided deposition testimony, the factual allegations are insufficient for the court to reasonably infer that defendants took the alleged actions because of McAdoo's handicap. The court concludes that dismissal of the § 3604(f)(1)(C) and § 3604(f)(2)(C) claims under Rule 12(b)(6), Fed. R. Civ. P., is appropriate.

With respect to the reasonable accommodation claim pursuant to § 3604(f)(3)(B), the court concludes that Watson's factual allegations state a plausible claim. To prevail on a failure-to-reasonably-accommodate claim, a plaintiff must establish (1) she is handicapped as defined by the FHA; (2) defendant knew or reasonably should have known of the claimed handicap; (3) the accommodation of the handicap may be necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) defendant refused to make such accommodation. Arnal v. Aspen View Condominium Association, Inc., 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016) (citing Dubois v. Association of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006)). Defendants challenge the third, fourth and fifth elements. In the court's view, Watson's factual allegations are sufficient to overcome dismissal under Rule 12(b)(6).

As to the third element, defendants contend that there is no logical connection between the alleged disability and the inability to pay the rent until the third Wednesday of the month.  However, Watson has alleged a causal link between the requested accommodation and her disability.  She alleges that she was unable to work because of her handicap and could not pay the rent until she received funds via her sole source of income – social security benefits.  The factual allegations, accepted as true, indicate that allowing Watson to pay her rent on the third Wednesday of the month was necessary to enable her to live in the apartment unit.  An accommodation addressing an inability to pay rent until receipt of social security benefits could "alleviate the effects of a disability."  *See*, <u>Schaw v. Habitat for Humanity of Citrus County, Inc.</u>, 938 F.3d 1259, 1264, 1272 (11th Cir. 2019); *see also*, <u>Giebeler v. M&B Associates</u>, 343 F.3d 1143, 1155 ( 9th Cir. 2003) ("Imposition of burdensome policies, including financial policies, can interfere with disabled persons' right to use and enjoyment of their dwellings, thus necessitating accommodation."); <u>Fair Housing Rights Center in Southeastern Pennsylvania v. Morgan Properties Management</u>, 2018 WL 3208159, at *7 (E.D. Penn. June 29, 2018) (finding the existence of a genuine issue of fact regarding whether the rental due date accommodation requested by tenant receiving social security disability insurance benefits was necessary to afford handicapped persons an equal opportunity to use and enjoy housing).

Additionally, as to fourth element, Watson has alleged that the accommodation is facially reasonable inasmuch as she alleges that defendants had previously allowed her to pay rent after receipt of social security benefits.  Also, she alleges that defendants allowed other tenants to pay rent in such manner. *See*, <u>Valencia v. City of Springfield, Illinois</u>, 883 F.3d 959, 968 (7th Cir. 2018) ("The burden is on the plaintiff[] to show that the accommodation [she] seeks is reasonable on its face.")

With respect to the fifth element, defendants are correct that Watson has alleged that they granted her request to reinstate the third Wednesday payment privilege. However, Watson has also set forth factual allegations sufficient to support a reasonable inference that while defendants granted that request on paper, they essentially denied the request each month thereafter by issuing the notices of lease violation. Watson has additionally alleged that defendants terminated her third Wednesday payment privilege without notice after having granted the requested accommodation for four years. The court concludes that Watson has plausibly alleged a failure-to-reasonably-accommodate claim under § 3604(f)(3)(B).

3.  42 U.S.C. § 3617 Claim

Count 3 alleges another violation of the FHA. Section 3617 makes it unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted by [the FHA].

42 U.S.C. § 3617.

To state a claim of retaliation under § 3617, a plaintiff must allege (1) she was engaged in protected activity; (2) she suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two. Arnal, 226 F. Supp. 3d at 1187-88; *see also*, Morgan v. Carrington Mortgage Services, 719 Fed Appx. 735, 743 (10th Cir. 2017) (plaintiff must allege a causal connection between her protected activity and the alleged adverse action). Protected activities include a request for reasonable accommodation, complaining about discriminatory housing practices and aiding a tenant in the exercise of her own fair housing rights. *See*, Chavez v. Aber, 122 F. Supp. 3d 581, 600 (W.D. Texas 2015); Arnal, 226 F. Supp. 3d at 1188.

In her amended pleading, Watson alleges that she requested a reasonable accommodation by requesting to reinstate her third Wednesday payment privilege in November and December of 2018, which was facially granted in January of 2019, and then in February of 2019, defendants issued a notice of lease violation and in March of 2019, defendants notified her counsel of non-renewal of her lease and in March, April and May of 2019, defendants issued additional notices of lease violation and in June 2019 filed an eviction action against her.  Watson alleges facts disputing the merits of the notice of lease violation and the non-renewal of the lease and eviction action.

Watson additionally alleges that in or around April, she filed a complaint for housing discrimination with the United States Department of Housing and Urban Development, which defendants knew about in April or May 2019.  She also alleges that defendants issued notices of lease violation in April and May of 2019 and filed an eviction action against her in June of 2019.  Watson alleges facts disputing the merits of the notices of lease violation and the eviction action.

Further, Watson alleges that she provided deposition testimony in a civil action filed by McAdoo against defendants alleging violations of fair housing rights. The matter was settled and resolved by the parties at the end of July 2020.  In August of 2020, defendants filed a third eviction action against Watson, alleging that she had refused to pay rent and had failed to comply with the rules and regulations of the complex.  Watson alleges she had not received any notices of lease violations between June 2019 and August 2020 and had not received any notices demanding payment of rent.[5]

---

[5] Defendants contend that they filed the third eviction action only to remedy an alleged error raised by plaintiff in the June 2019 eviction proceeding.  In support of the contention, defendants rely on the court's statement in a prior order addressing preliminary injunctive relief (doc. no. 15), which

The court concludes that the alleged facts, accepted as true and viewed in her favor, state plausible retaliation claims under § 3617.

4. <u>25 O.S. § 1452(A)(1), (3), (16)(b) and § 1601(1) Claim</u>

Count 4 alleges violations of the Oklahoma Discrimination in Housing Act (ODHA). Section 1452(A) of the Act makes it unlawful:

> [t]o refuse to . . . rent after the making of a bona fide offer, or to refuse to negotiate for the . . . rental of any housing, or otherwise make unavailable or deny any housing because of . . . disability[.]

> [t]o make, print, publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the . . . rental of housing that indicates any preference, limitation, discrimination, or intention to make any such preference, limitation, or discrimination because of . . . disability[.]

> [to] refus[e] to make reasonable accommodation in rules, policies, practices, or services, when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling[.]

25 O.S. 2011 § 1452(A)(1), (3) and (16)(b).

Section 1601 of the Act makes it unlawful:

> to retaliate or discriminate against a person because [she] has opposed a discriminatory practice, or because [she] has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act[.]

25 O.S. 2011 § 1601(1).

Watson asserts her § 1452(A)(1) claim corresponds with her § 3604(f)(1)(A) claim, her § 1452(A)(3) claim corresponds with her § 3604(c) claim, and her

---

relied upon the statement of defendants in their briefing with respect to the requested relief (doc. no. 14, p. 3, n. 1). The court declines to take judicial notice of the statements for the reason previously noted. *See*, *Tal*, 453 F.3d at 1264 n. 24.

§ 1452(A)(16)(b) claim corresponds with her § 3604(f)(3)(B) claim.  She also asserts that her § 1601(1) claim corresponds with her § 3617 claim.

For the reasons stated with respect to the § 3604(f)(1)(A) claim, the § 3604(c) claim, and the § 3617 claim relating to the filing of the HUD complaint and testifying in the McAdoo civil action, the court concludes that Watson has stated plausible claims under §§ 1452(A)(1), (3) and (16)(b) and 1601(1).

5. Section 504 Claim

In Count 5 of the First Amended Complaint, Watson alleges violation of section 504(a) of the Rehabilitation Act of 1973 (RA).  Section 504(a) provides in pertinent part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her . . . disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

To make out a prima facie case for discrimination under the RA, plaintiff must establish: (1) she is disabled under the RA; (2) she would be otherwise qualified to participate in the program; (3) the program receives federal assistance; and (4) the program has discriminated against her.  Shaw, 431 F. Supp. 3d at 1347.

The same analysis with respect to the FHA discrimination claim generally applies to the RA discrimination claim.  Shaw, 431 F. Supp. 3d at 1348; *see also*, Valencia, 883 F.3d at 967.  Thus, for the same reasons discussed, the court concludes that plaintiffs have set forth plausible discrimination claim under the RA.

6. Declaratory Judgment

In Count 6 of the First Amended Complaint, Watson requests a declaratory judgment that defendants' actions violated the CARES Act, specifically, 15 U.S.C.

§ 9058(c), and the USDA's regulations, 7 C.F.R. §§ 3560.159 and 3560.160.  With respect to the CARES Act violation, Watson claims that defendants failed to provide the mandatory 30-day written notice prior to filing the eviction action filed on August 24, 2020.  As to the USDA's regulations violations, Watson claims defendants' written notices of non-renewal and notices of lease termination did not comply with the requirements of § 3560.159(b) and defendants' notices failed to comply with the requirements of § 3560.160(e).

Initially, the court concludes that Watson's request for declaratory judgment for violations of the USDA's regulations should be dismissed.  The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought."  28 U.S.C. § 2201.  But the Act does not create substantive rights.  Hanson v. Wyatt, 552 F.3d 1148, 1157 (10th Cir. 2008).  Plaintiff has not cited, and the court has not found, any authority establishing that either § 3650.159 or § 3650.160 creates an express private cause of action.  And an implied private cause of action arising from a regulation is rarely recognized.  Id.  ("To the extent that [plaintiff] may be suggesting the alleged violation of [the military regulation] in itself gives him a cause of action, this theory also fails.  The Supreme Court has recently clarified that it will rarely recognize an implied cause of action arising from a mere regulation.") (citing Alexander v. Sandoval, 532 U.S. 275 (2001)).

Turning to the CARES Act violation, the court concludes that dismissal of the request for declaratory judgment is not appropriate.  Section 9058(c) provides that the lessor of a covered dwelling unit "may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate."  15 U.S.C. § 9058(c).  Watson has set forth factual allegations, accepted as true, that defendant violated § 9058(c) by failing to give a notice to vacate prior to filing the August 24, 2020 forcible entry

and detainer action.  Although defendants argue that the eviction action was not filed based upon a non-payment of rent, plaintiff alleges otherwise.  She also alleges that the eviction action was filed to require her to vacate her unit.  Further, she sets forth allegations challenging the validity of the non-renewal of her lease.

In Count 6 of her amended pleading, Watson also alleges that defendants violated the Oklahoma Residential Landlord and Tenant Act, 41 O.S. § 131, by failing to demand payment of rent in writing and allowing her five days to cure the deficiency before or after the filing of the August 2020 eviction action.  Accepting the pertinent allegations as true and viewing them in a light most favorable to Watson, the court concludes that dismissal of the declaratory judgment request based upon a violation of § 131 is not appropriate.

7.  <u>Breach of Contract</u>

Count 7 alleges a claim for breach of contract for violations of the FHA, ODHA, the CARES Act, the USDA regulations and rules, the RA and the Oklahoma Residential Landlord and Tenant Act.  Watson alleges the lease required defendants to comply with federal and state anti-discrimination laws, the USDA regulations and rules and the landlord-tenant state laws.

Defendants challenge the breach of contract claim on the ground that Watson has no plausible claim for violation of any of the stated federal and state laws.  In light of the court's finding that Watson has stated plausible claims under the various federal and state laws, the court concludes Watson has alleged a plausible claim for breach of contract.  Further, even though the court has dismissed the declaratory judgment sought for violation of the USDA's regulations, the court concludes, based upon Watson's factual allegations, accepted as true and viewed in her favor, that Watson has stated a plausible breach of contract claim based upon those regulations.

8.  <u>Oklahoma Consumer Protection Act</u>

In Count 8, the final count of the First Amended Complaint, Watson alleges violations of the Oklahoma Consumer Protection Act ("OCPA").  The four elements of a consumer's private action under the OCPA are: (1) defendant engaged in an unlawful practice as defined at 15 O.S. § 753; (2) the challenged practice occurred in the course of defendant's business; (3) plaintiff, as consumer, suffered an injury in fact; and (4) the challenged practice caused plaintiff's injury.  Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000).

Defendants argue that even assuming the OCPA applies to residential lease agreements, Watson's amended pleading does not state a plausible OCPA claim. According to defendants, Watson has not made specific factual allegations sufficient to plausibly show that they engaged in an unlawful practice as defined in § 753. They contend that Watson has alleged her OCPA claim only in conclusory terms, which is not sufficient.

Upon review of the amended pleading and her briefing, it appears Watson relies upon the catchall provision of the OCPA, 15 O.S. § 753(20), that declares unlawful the commission of any "unfair or deceptive trade practice as defined in [15 O.S. §] 752[.]"  An unfair trade practice is defined as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  15 O.S. § 752(14).  A deceptive trade practice is defined as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."  15 O.S. § 752(13).

Accepting the pertinent allegations as true and viewing them in a light most favorable to Watson, the court concludes that the First Amended Complaint sets forth allegations sufficient to overcome defendants' argument for dismissal under Rule 12(b)(6).  The court therefore concludes that dismissal of the OCPA claim is not appropriate.

Conclusion

For the reasons stated, Defendants' Motion for Dismiss Plaintiff's First Amended Complaint, filed January 25, 2021 (doc. no. 20), is **GRANTED in part** and **DENIED in part**.

The motion is **GRANTED** with respect to plaintiff's claims under the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(C) and 42 U.S.C. § 3604(f)(2)(C), and plaintiff's request for declaratory judgment based upon the United States Department of Agriculture's regulations, 7 C.F.R. § 3560.159 and 7 C.F.R. § 3560.160.

The motion is **DENIED** in all other respects.

IT IS SO ORDERED this 12th day of April, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1011p005.docx