**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ARLETA WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-20-1011-F |
| | ) | |
| VICI COMMUNITY | ) | |
| DEVELOPMENT CORP., and | ) | |
| CINDY ARNOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Arleta Watson (Watson) is a resident of the Vici Manor Apartments, a sixteen-unit housing complex in Vici, Oklahoma.  The apartments provide low-income housing to individuals who qualify for rental assistance through the United States Department of Agriculture, Rural Development (RD) Division's rental assistance program.  Defendant Vici Community Development Corp. (Vici) is the owner of the apartments, and defendant Cindy Arnold (Arnold) serves the apartments as property manager.

Watson commenced this action alleging Vici and Arnold violated federal and state laws in relation to her, a disabled tenant.  In the First Amended Complaint, Watson sought declaratory relief for violations of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 15 U.S.C. § 9058, and the United States Department of Agriculture, Rural Development (RD) Division, Multifamily Housing Regulations, 7 C.F.R. §§ 3560, *et seq.*  She sought damages and injunctive relief for violations of the Fair Housing Act and the Fair Housing Amendments Act (FHA), 42 U.S.C. §§ 3601, *et seq.*; the Oklahoma Discrimination in Housing Act

(ODHA), 25 O.S. 2021 §§ 1451, *et seq*.; the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794(a); the Oklahoma Residential Landlord and Tenant Act (ORLTA), 41 O.S. 2021 §§ 101, *et seq*.; and the Oklahoma Consumer Protection Act, 15 O.S. 2021 §§ 751, *et seq*.  Watson also sought damages based upon common law breach of contract.

In a previous order, the court granted defendants' motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., regarding Watson's claims under the FHA, specifically, 42 U.S.C. § 3604(f)(1)(C) and 42 U.S.C. (f)(2)(C), and Watson's request for declaratory relief for alleged violations of the United States Department of Agriculture's regulations, 7 C.F.R. § 3560.159 and 7 C.F.R. § 350.160.  *See*, doc. no. 25.

Defendants have moved for summary judgment under Rule 56(a), Fed. R. Civ. P., on Watson's remaining claims.  Watson has moved for partial summary judgment under Rule 56(a) on her claims for violations of the (1) FHA, specifically, 42 U.S.C. § 3604(c) and 42 U.S.C. § 3617; (2) ODHA, specifically, 25 O.S. 2021 § 1452(A)(3), and 25 O.S. 2021 § 1601(1); and (3) CARES Act.  Upon due consideration of the parties' submissions and relevant law, the court makes its determination.[1]

---

[1] In their reply in support of their summary judgment motion, defendants argue that Watson has failed to cite specific evidentiary material to support her disputes with respect to defendants' material facts.  Defendants request, pursuant to LCvR 56.1(e), that each of their statements of undisputed material facts (nos.1-82) be deemed admitted.  The court, exercising its discretion, declines to grant defendants' request.  The court has reviewed the evidentiary material proffered by Watson in her motion, which was incorporated into her response, along with the evidentiary material proffered in her response, in deciding whether a genuine factual dispute exists.  The court notes that defendants also incorporated evidentiary material from their motion in support of their response to Watson's partial summary judgment.

I.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A factual dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*.  In making its determination, the court views the evidence and draws all justifiable inferences in the non-movant's favor.  *Id*. at 255.

Where both parties have moved for summary judgment, the court may "assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."  Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotations marks omitted).  "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."  Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979) (citations omitted).

II.

<u>42 U.S.C. § 3604(c) Claim</u>

Watson has alleged defendants violated the FHA, specifically, 42 U.S.C. § 3604(c).  Section 3604(c) makes it unlawful:

> [t]o make, print, or publish, or cause to be made, printed, or published any notice, statement . . . with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination . . . based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).  The United States Department of Housing and Urban Development (HUD) interprets section 3604(c) to apply to both written and oral

3

notices or statements by a person engaged in the sale or rental of a dwelling.  *See*, 24 C.F.R. § 100.75(b).  Despite defendants' suggestions to the contrary, section 3604(c) protects "not only prospective tenants, but also existing ones."  Housing Rights Center v. Sterling, 404 F. Supp. 2d 1179, 1193 (C.D. Cal. 2004).

To prevail on a claim under section 3604(c), a plaintiff must present evidence that: (1) the defendant made a statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination based upon handicap.  Corey v. Secretary, U.S. Dept. of Housing & Urban Development ex rel. Walker, 719 F.3d 322, 326 (4th Cir. 2013) (citing White v. HUD, 475 F.3d 898, 904 (7th Cir. 2007)).  A plaintiff need not establish that she is a member of a protected class under the FHA.  *See*, Wentworth v. Hedson, 493 F. Supp. 2d 559, 566 (E.D.N.Y. 2007).

Watson argues that she is entitled to summary judgment on her section 3604(c) claim based on four statements: (1) an oral statement made by Arnold to another that Watson was faking and was not disabled; (2) a written statement in a letter dated January 11, 2019 from Vici's counsel to Watson's counsel that Watson's claims and allegations of disability were false; (3) a written notice of lease violation signed by Arnold and dated February 20, 2019, requiring Watson to bring her rent to the recreation center; and (4) a written notice of lease violation signed by  Amanda Gresham and dated May 15, 2019, requiring Watson to bring her own rent to the recreation center.  Defendants contend that Watson cannot rely upon Arnold's oral statement and Vici's counsel's letter in support of her section 3604(c) claim because Watson cannot show the evidence would be admissible at trial.  Defendants point out that Arnold's oral statement was conveyed to Watson by an unidentified individual and Watson's testimony relating to what was said by the unidentified individual constitutes inadmissible hearsay.  Likewise, defendants assert the letter of Vici's counsel to Watson's counsel constitutes inadmissible hearsay.  As to the

written notices of lease violation, defendants contend that Watson has failed to show they indicate a preference, limitation, or discrimination based upon handicap. Because Watson cannot show a statement indicating a preference, limitation, or discrimination based upon handicap, defendants request the court to grant summary judgment in their favor on Watson's section 3604(c) claim.

At the summary judgment stage, "evidence need not be submitted 'in a form that would be admissible at trial.'" Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). However, "'the content or substance of the evidence must be admissible.'" Argo, 452 F.3d at 1199 (quoting Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995)).

The court concludes that Watson has failed to show that the evidence regarding Arnold's oral statement would be admissible at trial. Although Watson is correct Arnold's oral statement qualifies as a non-hearsay admission of a party opponent under Rule 801(d)(2)(A) and (D), Fed. R. Evid., Watson has not shown that the out-of-court statement by the unidentified person to her about Arnold's oral statement, which also constitutes hearsay, see, 801(c), Fed. R. Evid., would be admissible at trial. See, Johnson v. Weld County, Colo., 594 F.3d 1202, 1209 (10th Cir. 2010) (Even if the party-opponent's actions or statements "don't themselves raise a hearsay problem, the out-of-court statements describing them still do.") (citation omitted).[2] Consequently, the court concludes that Watson cannot rely upon Arnold's oral statement in support of, or in opposition to, summary judgment on the section 3604(c) claim. See, Argo, 452 F.3d at 1199 (Courts "should disregard

---

[2] In her response to defendants' summary judgment motion, Watson cites Campbell v. Robb, 162 Fed. Appx. 460, 2006 WL 45253 (6th Cir. 2006), as support for the use of Arnold's oral statement. Campbell, however, does not address the admissibility of a hearsay statement.

inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form.") (emphasis in original).

As to the statement of Vici's counsel in the January 11, 2019 letter to Watson's counsel, the court also concludes that Watson cannot rely upon the statement as evidence to support her section 3604(c) claim.  In her papers, Watson does not specifically explain how the January 11, 2019 letter would be admissible at trial.  Watson has not addressed the authority cited by defendants, Timberlake Const. Co. v. U.S. Fidelity and Guar. Co., 71 F.3d 335, 341 (10th Cir. 1995), supporting their argument that Vici's counsel's letter constitutes inadmissible hearsay.  With no developed argument as to how the letter would be admissible at trial and the court declines to advocate on Watson's behalf, the court finds that the January 11, 2019 letter cannot be used as evidence to support Watson's section 3604(c) claim for summary judgment purposes.

Turning to the written notices of lease violation, defendants do not challenge their admissibility at trial.  Instead, they argue Watson cannot show that the notices satisfy the third prong of a section 3604(c) claim because an "ordinary reader" of the notices, along with the amended lease to which they refer, would not interpret the notices as indicating a preference, limitation, or discrimination based upon handicap.

In determining whether the third prong is met, courts use, and the parties appear to invoke, an "ordinary listener" or "ordinary reader" standard.  Corey, 719 F.3d at 326 (citing White, 475 U.S. at 904); United States v. Hunter, 459 F.2d 205, 215 (4th Cir. 1972)); *see also*, Soules v. U.S. Dept. of Housing and Urban Development, 967 F.2d 817, 824 (2d Cir. 1992).  If the "ordinary listener" or "ordinary reader" would believe the statement suggests a preference, limitation, or discrimination based on disability, the statement is deemed discriminatory.  *Id*.  The "ordinary listener" or "ordinary reader" "is neither the most suspicious nor the most

insensitive of our citizenry." White, 475 U.S. at 906. (citation and quotation marks omitted).

Courts have determined that a statement that is not facially discriminatory may nonetheless constitute a violation of section 3604(c) if the context suggests an impermissible preference. *See*, Soules, 967 F.2d at 824-25. Although a lack of discriminatory intent does not provide an affirmative defense, an examination of intent is helpful to determine the context in which the statement was made. *See*, Soules, 967 F.2d at 824-25.

Based upon the record, the court concludes that neither Watson nor defendants are entitled to summary judgment on the issue of whether the notices violated section 3604(c). Defendants previously challenged Watson's section 3604(c) claim based upon the notices, and the court, accepting the allegations of Watson's First Amended Complaint as true and viewing the allegations in her favor, concluded that the language of the notices suggested a preference, limitation or discrimination based on disability. *See*, doc. no. 25, ECF p. 12. Watson has supported those allegations with evidence. And with the evidence and inferences drawn from that evidence viewed in Watson's favor, the court concludes that a rational jury could find that the notices, in the context of which they were made, suggested that defendants disfavored a handicapped tenant for the housing. However, viewing the evidence in the record and inferences drawn from that evidence in defendants' favor, the court also concludes that a rational juror could find that the notices, in the context in which they were made, did not suggest that Arnold and Gresham disfavored a handicapped tenant for housing. In the court's view, a genuine issue of material fact exists–both ways–as to whether an "ordinary reader" would consider the notices, in the context in which they were made, as suggesting that defendants disfavored a handicapped tenant for the housing. Summary judgment is thus denied on Watson's section 3604(c) claim.

42 U.S.C. § 3604(f) Claims

In addition, Watson alleges that defendants violated section 3604(f).  That provision of the FHA makes it unlawful:

> [t]o discriminate in the . . . rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap of . . . that . . . renter . . . .
>
> [t]o discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of a handicap of . . . that person . . . .
>
> [to] refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. §§ 3604(f)(1)(A); (f)(2)(A); and (f)(3)(B).

Initially, defendants seek summary judgment on Watson's discrimination claims under section 3604(f)(1)(A) and section 3604(f)(2)(A), arguing that none of Watson's various medical conditions, identified in her deposition, meet the definition of "handicap" under the FHA.  Defendants point out that Watson testified she can care for herself without assistance, and she is quite independent.  They also point out that Watson has not received any disability benefits from the government.  The benefits she receives from the government, defendants assert, are based upon her age.  Further, defendants claim that Watson has never provided to them sufficient documentation, when seeking recertification for housing, to support any of her alleged disabilities.

To establish a claim under section 3604(f)(1)A) and section 3604(f)(2)(A), Watson must show the existence of a "handicap" within the meaning of the FHA.  Rodriguez v. Village Green Realty, Inc., 788 F.3d 31, 40 (2d Cir. 2015).  The FHA defines "handicap" as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such

an impairment, or (3) being regarded as having such an impairment[.]" 42 U.S.C. § 3602(h).  For purposes of the definition's first prong, "major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  24 C.F.R. § 100.201(b).

Watson asserts that she qualifies as handicapped under the first prong of the handicap definition.  She contends that after surgery on both knees, she is substantially limited in the major life activity of walking.  In support of her assertion, Watson relies upon a sworn letter from her doctor that she presented to defendants stating that Watson "has had surgery done on both of her knees and has permanent limited mobility."  Doc. no. 41-4.  She also relies upon the following testimony from her deposition:

> Q.  (Defense counsel): Time out.  So your understanding of the word disability, can you—can you clarify that one more time, please?

> A.  (Watson): It's not able to do the regular things that I did before.  Like it's a bummer to try to carry in groceries. I have—if I buy potatoes or stuff, I could have—it takes me several trips from the pickup to the apartment and I have to take a gunny sack or a—if I buy—like if I bought a watermelon, I have to take it and slide it on the grass and—because I really—my knees have really gone downhill.  I've had three knee surgeries, two with revision. And it's not easy.

> * * * *

> Q. (Defense counsel): What else do you contend is a disability?

> A. (Watson): I cannot bend my knees.   That's my disability.

> Q. (Defense counsel): And when did you get that diagnosis?

A. (Watson): My knees, we're talking about?

Q. (Defense counsel): Yes, ma'am.

A. (Watson): I've had—before the knee implants revision, I had three different operations at Shattuck for knee problems[.]

Doc. no. 51-11, p. 113, ll. 12-23; p. 120, 18-25, p. 121, 1-2.

In addition, the record contains deposition testimony from Watson that "a lot of times" she "can't raise [her] knee;" "there are times" when she cannot walk, especially when sitting too long; and she "can't walk across the street" because its "gravel and stuff like that." Doc. no. 51-12, p. 153, ll. 8-9; doc. no. 44-17, p. 137, ll. 19-20; doc. no. 41-27, p. 117, ll. 20-21.

Upon review, the court concludes—although this is an exceedingly close issue—that the evidence proffered by Watson and in the record before the court is sufficient, if barely, to raise a genuine issue of material fact that her knee impairments substantially limit her ability to walk. A major life activity is "'substantially limit[ed]'" if the impairment "'prevent[s] or severely restrict[s]'" the major life activity and has a "'permanent or long-term'" impact. Rodriguez, 788 F.3d at 43 (quoting Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002), superseded by ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553).[3] Watson's physician indicated in his letter that Watson has permanent limited mobility, and he does not, in terms, indicate whether Watson is prevented or severely restricted from walking. Consequently, the physician's letter does not move the needle much, if any, in Watson's favor, even for summary

---

[3] "Courts define 'handicap' under the FHA in the same manner that the Americans with Disabilities Act defined 'disability' prior to its 2008 amendments." Warren v. S&S Property Management, Inc., 2020 WL 5223750, at * 4 (N.D. Ga. June 3, 2020) (citing Rodriguez, 788 F.3d at 40, n. 10; other citation omitted).

judgment purposes.  But Watson's deposition testimony, viewed in her favor, is sufficient—again, just barely—to raise a triable fact issue, under the statutory standard, as to whether she is severely restricted in her ability to walk.  (This issue—upon which several claims depend—will deserve, and will probably get, a hard look at the Rule 50 stage.)

In their motion, defendants contend that even if Watson is handicapped within the meaning of the FHA, they are nonetheless entitled to summary judgment on the section 3604(f)(1)(A) and section 3604(f)(2)(A) claims.  Defendants assert that Watson in her deposition "could not articulate with any level of specificity how [d]efendants have discriminated against her on the basis of her alleged handicap."  Doc. no. 44, ECF p. 28.  According to defendants, Watson's "complaints all stem from [her] interactions with [Arnold] regarding maintenance repairs, which [Watson] [admitted had] nothing to do with her alleged disabilities."  *Id.*

Upon review, the court concludes that summary judgment is not appropriate on the section 3604(f)(1)(A) claim or the section 3604(f)(2)(A) claim.  The court declines to limit Watson from relying upon evidence other than her deposition to support her claims.  Defendants have failed to support their position with any legal authority.  The court concludes that the evidence proffered by Watson and existing in the record is sufficient to raise a genuine issue of material fact as to whether defendants made her dwelling unavailable or subjected her to different terms and conditions of the rental of that dwelling because of Watson's handicap.

Next, defendants seek summary judgment on Watson's failure-to-reasonably-accommodate claim under section 3604(f)(3)(B).  Defendants challenge the section 3604(f)(3)(B) claim, arguing that Watson failed to identify in her deposition a requested reasonable accommodation that defendants refused to make.  Defendants point out that Watson only testified to maintenance requests and the evidence shows that they remedied each of those requests.

Watson, in response, relies upon three requests for reasonable accommodations, which she contends were denied by defendants: (1) a request on November 2, 2018 to pay her rent on the third week of the month when she received her government assistance check; (2) a request on December 28, 2018 to again pay her rent on the third week of the month when she received her government assistance check; and (3) a request remove debris (rocks, leaves and tumbleweeds) from the front of her door.

Defendants, in their papers, have objected to the November and December 2018 requests, arguing they constitute hearsay evidence that would be inadmissible at trial. They also argue that Watson did not reference those requests during her deposition as supporting her section 3504(f)(3)(B) claim.

To prevail on a claim under section 3604(f)(3)(B), Watson must prove that: (1) she is handicapped under the FHA; (2) the defendants knew or should have known of the claimed handicap; (3) the accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendants refused to make such accommodation.  Arnal v. Aspen View Condominium Association, Inc., 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016).

The court notes that defendants have not challenged the section 3604(f)(3)(B) claim on the basis that Watson cannot establish that she is handicapped under the FHA.  Even if they did raise such challenge, the court, as discussed, concludes that a genuine issue of material fact exists on the issue.  As to whether Watson can rely upon the three referenced requests to support her section 3604(f)(3)(B) claim, the court concludes that she may.  Again, the court declines to limit Watson to her deposition testimony.  And while the evidence of the November and December 2018 requests constitute hearsay evidence and Watson has not proffered any acceptable exception to the hearsay rule for admissibility of the evidence, the court concludes

that Watson, who would have personal knowledge of the November and December 2018 requests, can testify at trial from her memory of those requests that were made on her behalf by counsel.  The court also concludes that Watson can also rely upon her request to remove debris to support her claim even though she did not testify to that request when addressing her section 3604(f)(3)(B) claim.  Further, the court concludes that Watson has raised a genuine issue of material fact, through proffered notices of lease violation and her deposition testimony, as to whether the relied-upon requests were necessary to afford her an equal opportunity to use and enjoy the dwelling, were reasonable, and were refused.  The court therefore concludes that defendants are not entitled to summary judgment on the section 3604(f)(3)(B) claim.

42 U.S.C. § 3617 Claim

Section 3617 of the FHA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 [of the FHA.]"  42 U.S.C. § 3617.

"Under its terms, [section 3617] protects two distinct groups of individuals." Frazier v. Rominger, 27 F.3d 828, 833 (2d Cir. 1994).  "First, it safeguards members of the protected class [*i.e.*, handicapped] from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights."  *Id*. "Second, it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights."  *Id*.

Defendants and Watson seek summary judgment regarding the section 3617 claim.  Initially, based upon its previous finding that Watson has proffered sufficient evidence to raise a genuine issue of material fact that she is handicapped under the FHA, the court concludes that Watson can show that she is a member of the protected

class and can pursue a claim under section 3617 based upon any alleged coercion, intimidation, threats, or interference on account of having exercised or enjoyed her Fair Housing Act rights.  Watson alleges that defendants, through their conduct, interfered with her on account of her having exercised her Fair Housing Act rights.

To establish a claim under section 3617 on account of having exercised her rights under the FHA, a plaintiff must show that: (1) she exercised a right guaranteed by the FHA; (2) a defendant's intentional conduct constituted interference; and (3) a causal connection exists between the exercise of the FHA right and defendants' conduct.  *See*, McDonald v. Madison Flats, 2021 WL 6118671, at *2 (M.D. Tenn. Dec. 27, 2021).

Defendants contend that summary judgment in their favor on the section 3617 claim is warranted because Watson failed to articulate in her deposition how she suffered any adverse action (*i.e.,* interference) by defendants after engaging in protected activity relating to her handicap.  Defendants point out that Watson complained about leaves accumulating at her door and being struck by Arnold (which defendants vehemently deny) but contend those actions were not in retaliation for Watson engaging in protected activity.  According to defendants, Watson's complaints regarding defendants' conduct all stem from maintenance requests to her rental unit and Watson admitted in deposition that none of the conduct had anything to do with her alleged handicap.  Further, to the extent the section 3617 claim is based upon Watson filing a HUD complaint in April 2019, defendants contend that they did not commence the June 2019 eviction proceeding because of that complaint.  Defendants also assert that they did not receive notice of the HUD complaint until after the eviction proceeding had begun.  Defendants also object to the HUD filing on the ground that the document is unauthenticated and constitutes hearsay evidence, which would be inadmissible at trial.

Watson, in support of summary judgment, contends that she engaged in protected activity or exercised a right under the FHA by making her requests for reasonable accommodation in November and December 2018 (asking to pay rent the third week of the month) and by filing the HUD complaint concerning discrimination in housing.   Watson asserts that defendants engaged in intentional conduct that constituted interference or an adverse action by issuing her notices of lease violation in November, 2018, February, 2019 and May, 2019 and by non-renewing her lease in March, 2019.   She also asserts that after she requested the state court to stay the June 2019 eviction proceeding because of her HUD complaint and the state court stayed the proceeding conditioned upon her compliance with the terms of her lease, defendants refused to accept rent from Watson.

Upon review, the court concludes that neither defendants nor Watson are entitled to summary judgment on the section 3617 claim on account of Watson having exercised her rights under the FHA.   The court concludes that Watson may rely upon her November and December 2018 requests and the HUD complaint to support her section 3617 claim, despite not being raised at her deposition.   And even though Watson has not addressed defendants' authentication and admissibility arguments regarding the HUD complaint, the court concludes that Watson, who has personal knowledge of that complaint, can testify to its filing at trial.   Although Watson has proffered evidence to show an interference or adverse action occurring shortly after her November and December 2018 requests and after defendants' notification of her HUD complaint, the court concludes that genuine issues of material fact exist as to whether defendants' challenged conduct was on account of Watson having exercised her rights under the FHA.

In her papers, Watson also claims that defendants interfered with her because she aided or encouraged another tenant, Judy McAdoo (McAdoo), in exercising her FHA rights.   Specifically, Watson claims that defendants commenced the August 25,

2020 eviction proceeding because of her testifying on McAdoo's behalf in her FHA suit. Despite defendants' arguments to the contrary, the court concludes that Watson may rely upon her participation as a witness in McAdoo's lawsuit to support her section 3617 claim, even though she did not testify to it in deposition.[4]

Upon review of the record, the court concludes that genuine issues of material fact exist as to whether defendants commenced the August 25, 2020 eviction proceeding because Watson participated as a witness in the McAdoo lawsuit. The court therefore finds that summary judgment is not appropriate on Watson's section 3617 claim based upon an alleged interference by defendants on account of her having aided or encouraged McAdoo in the exercise of her rights under the FHA.

ODHA Claims

Watson alleges that defendants violated various sections of the ODHA, specifically, 25 O.S. 2021 § 1452(A)(1); 25 O.S. 2021 § 1452(A)(3) and 25 O.S. 2021 § 1452(A)(16)(b). According to Watson, her section 1452(A)(1) claim corresponds with her section 3604(f)(1)(A) claim, her section 1452(A)(3) claim corresponds with her section 3604(c) claim and her section 1452(A)(16)(b) claim corresponds with her section 3604(f)(3)(B) claim. The parties appear to agree the analysis regarding the federal and state law claims are the same.

The ODHA uses the term "disability" rather than "handicap." However, the ODHA defines disability similar to the FHA's definition of handicap—"a mental or physical impairment that substantially limits at least one major life activity[.]" 25

---

[4] Further, the court notes that even if Watson were not handicapped within the meaning of the FHA, Watson may still pursue her section 3617 claim based upon her participation as a witness in the McAdoo lawsuit and the August 25, 2020 eviction proceeding. *See, e.g.*, Berlickij v. Town of Castleton, 248 F. Supp. 2d 335, 346 (D. Vt. 2003) ("Because [plaintiff] has not claimed that she is a member of a protected class, she must be able to prove at trial that she was an individual who aided or encouraged members of a protected class in the exercise or enjoyment of their Fair Housing Act rights, and that she, not members of the protected class, suffered coercion, intimidation, threats or interference.").

O.S. 2021 § 1451(6).  For the reasons previously discussed, the court concludes that the evidence in the record before the court, viewed in Watson's favor, is sufficient— just barely—to raise a triable fact issue as to whether Watson is disabled within the meaning of the ODHA.  Further, the court concludes the evidence is sufficient to raise a genuine issue of material fact as to whether defendants made Watson's housing unavailable because of her disability and as to whether defendants refused to make reasonable accommodations in the rules, policies, practices, or services that may be necessary to afford Watson equal opportunity to use and enjoy her dwelling. Therefore, the court concludes that defendants are not entitled to summary judgment on Watson's section 1452(A)(1) claim and section 1452(A)(16)(b) claim.

For the reasons discussed regarding the section 3604(c) claim, the court concludes that neither defendants nor Watson are entitled to summary judgment on Watson's section 1452(A)(3) claim.

Lastly, Watson alleges a claim against defendants under 25 O.S. 2021 § 1601(1).  Section 1601, entitled "Other discriminatory practices," provides in relevant part that "[i]t is a discriminatory practice for a person . . . to retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act."  Watson alleges the section 1601(1) claim corresponds with her section 3617 claim.  And it appears from their briefing, defendants believe the same analysis of the section 1601(1) claim and section 3617 claim applies.  Thus, for the reasons previously discussed, the court

concludes that neither Watson nor the defendants are entitled to summary judgment on the section 1601(1) claim.[5]

Rehabilitation Act Claim

Defendants seek summary judgment on Watson's Rehabilitation Act claim. "'To make out a prima facie case for discrimination in violation of the Rehabilitation Act, [plaintiff] must establish "(1) that [she] is disabled under the Act"; (2) that [she] would be "otherwise qualified" to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency . . .); and (4) that the program has discriminated against the plaintiff.'" Shaw v. Cherokee Meadows, L.P., 431 F.Supp.3d 1336 (N.D. Okla. 2019) (quoting Wilkerson v. Shinseki, 606 F.3d 1256, 1262 (10th Cir. 2010) (quoting McGeshick v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004)).

In their motion, defendants only challenge Watson's ability to satisfy the fourth element of her prima facie case. Defendants argue that Watson cannot establish that she was excluded from participation in the RD rental subsidy program solely by reason of her alleged disability. Defendants contend that her lease was terminated because of numerous lease violations for failure to pay rent on time and for failure to keep her apartment free and clear of debris, failure to participate in monthly inspections and failure to follow the rules and regulations of the complex. However, upon review of the evidence in the record in a light most favorable to Watson, the court concludes that a genuine issue of material fact exists as to whether Watson was excluded from participation in the RD rental subsidy program solely by reason of her alleged disability.

---

[5] The court notes Watson relies upon the November and December 2018 requests for reasonable accommodations, the April 2019 HUD complaint, and her participation as a witness in the McAdoo lawsuit to support her section 1601(1) claim. The parties have not analyzed, and the court declines to analyze, whether all those circumstances would fall within the language of section 1601(1).

CARES Act Claim

Watson seeks a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. 2201, that defendants' August 25, 2020 eviction filing (affidavit and summons) violated the CARES Act.  The CARES Act requires certain landlords to give tenants at least 30 days' notice to vacate a covered dwelling before filing a petition for eviction.  *See*, 15 U.S.C. § 9508(c).  Watson contends that defendants failed to adhere to the 30-day notice requirement prior to commencing the eviction process.  Although Watson seeks no relief other than declaratory relief, section 2201 permits the court to "declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*."  28 U.S.C. § 2201(a) (emphasis added).  "A request for relief may be so limited under the Declaratory Judgment Act, and any further necessary and proper relief based upon the declaratory judgment and any additional facts which might be necessary to support such relief can be sought at a later time."  United States v. Fisher-Otis Co., Inc., 496 F.2d 1146, 1149 (10th Cir. 1974) (citations omitted).

In support of summary judgment in their favor and in opposition to Watson's summary judgment motion, defendants do not dispute that they did not give Watson 30 days' notice prior to its August 25, 2020 eviction filing.  Instead, they assert that section 9058(c)'s notice requirement does not apply because its eviction filing was not based upon the "nonpayment of rent."  *See*, 15 U.S.C. § 9058(b).  Defendants maintain that they commenced the August 25, 2020 eviction proceeding because there was no valid lease agreement in existence (the lease agreement had been non-renewed in March, 2019 and it expired at the end of May, 2019) and they sought to remedy an alleged jurisdictional defect in the July 2019 eviction filing.  Defendants submit Arnold's affidavit and other documentary evidence in support of their position.

Upon review, the court finds that neither defendants nor Watson are entitled to summary judgment. The court concludes that there is a genuine issue of material fact as to the reason for defendants' August 25, 2020 eviction filing. Although defendants have proffered evidence that they were not seeking the payment of past due rent, the record includes evidence that defendants were in fact seeking to recover past due rent. Indeed, Arnold's affidavit filed on August 25, 2020 averred as follows:

> That [Watson] is indebted to [Vici] for rent and court costs; that [Vici] has demanded payment of said sum(s) but [Watson] refused to pay the same and no part of the amount sued for has been paid.
>
> *And/or*
>
> [Watson] is wrongfully in possession of certain real property . . . that [Vici] is entitled to possession thereof and has made demand on [Watson] to vacate the premises, but [Watson] refused to do so.

Doc. no. 41-18; doc. no. 44-42 (emphasis added).

The court concludes the issue as to defendants' reason for commencing the August 25, 2020 eviction proceeding and whether they violated the CARES Act is for one trial.

Oklahoma Residential Landlord and Tenant Act

Watson seeks a declaratory judgment that defendants' August 25, 2020 eviction filing violated the ORLTA. The ORLTA provides, in pertinent part, that "[a] landlord may terminate a rental agreement for failure to pay rent when due, if the tenant fails to pay the rent within five (5) days after written notice of landlord's demand for payment[.]" 41 O.S. § 131(B).

Defendants argue that summary judgment is appropriate on the ORLTA claim because no notice was required due to the fact that Watson's lease expired on

May 31, 2019, and defendants commenced the eviction process after she failed to vacate the premises. Watson, however, argues that her lease did not expire on May 31, 2019, and that the defendants, prior to commencing the August 25, 2020 eviction process, did not give her written notice of a demand for payment.

Upon review, the court concludes that a genuine issue of material fact exists as to whether defendants were required to give written notice of a demand for payment of rent prior to the August 25, 2020 eviction filing. The court concludes that Watson has raised a genuine issue of material fact as to whether defendants could refuse to renew the lease and allow the lease to expire on May 31, 2019, in light of the terms of the Lease Addendum for General Lease Terms which were a part of Watson's apartment lease.

Breach of Contract

Defendants seek summary judgment on Watson's breach of contract claim. Defendants assert that Watson could not identify in her deposition the contract which serves as the basis of her claim. Because Watson could not identify the contract supporting her claim, defendants contend that Watson cannot establish the first essential element of her breach of contract claim – formation of a contract.

"When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008). The moving party can satisfy the initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Id. (citation and internal quotation marks omitted). If the movant carries the initial burden, the nonmoving party is then required to go beyond the pleadings and designate evidence

of specific facts showing that there is a genuine issue for trial.  Celotex Corp., 477 U.S. at 323.

The court concludes that defendants have satisfied their initial burden by showing that Watson does not have enough evidence to carry her burden of persuasion on her breach of contract claim because she did not identify in her deposition a contract that was breached.  However, the court concludes that Watson has designated evidence of specific facts, specifically, the apartment leases, including the last apartment lease executed by Watson and Arnold, which defendants contend expired on May 31, 2019, which constituted a contract between the parties.  Although Watson did not refer to the last apartment lease in her deposition, defendants do not dispute that the apartment lease existed.  Given that Watson has proffered evidence of the formation of a contract between the parties, and defendants do not challenge Watson's ability to satisfy the other elements of her breach of contract claim,[6] the court concludes that defendants are not entitled to summary judgment on Watson's breach of contract claim.

Oklahoma Consumer Protection Act Claim

Lastly, defendants challenge Watson's claim alleging violations of the OCPA. Defendants argue that Watson cannot establish they engaged in an "unlawful practice" as defined by the OCPA, 15 O.S. 2021 § 752.  Defendants contend that when questioned about her OCPA claim in deposition, Watson testified they violated the statute by spreading rumors about her, installing cameras on the property, cleaning out sewage on the property, Arnold flipping her off at a local store and following her around town.  Even if Watson's testimony were true, defendants

---

[6] In order to prevail on a breach of contract claim, a plaintiff must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach.  Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 843 (Okla. 2001).

contend that none of these circumstances constitute an unlawful practice as defined by the statute.

To establish a claim under the OCPA, a plaintiff must show in part that the defendant engaged in an unlawful practice as defined by 15 O.S. 2021 § 753. *See*, Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000). Section 753 states in relevant part that a person engages in an unlawful practice if the person "[c]ommits an unfair or deceptive trade practice as defined in [15 O.S. 2021 § 752]. An unfair trade practice is defined by section 752 as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." 15 O.S. 2021 § 752(14). A deceptive trade practice is defined by section 752 as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral[.]" 15 O.S. 2021 § 752(13).

In response, Watson does not argue that the circumstances she referred to in her deposition constitute an unfair trade practice or a deceptive trade practice. According to her, defendants "want the Court to isolate [her] deposition statements from the remaining evidence that supports a favorable inference for her on this claim." Doc. no. 51, ECF p. 35. Watson states that the evidence supports an "inference that the Defendants violated the OCPA by unfairly and deceptively retaliating against [her], refusing to make repairs to her unit, unfairly terminating her tenancy, unfairly overcharging her for rent, and assessing unlawful late fees to her." *Id*.

The court concludes that defendants satisfied their initial burden of production by showing that Watson does not have enough evidence to carry her burden of persuasion on her OCPA claim. Watson does not argue that defendants' alleged

23

conduct which she discussed in her deposition constitutes an unlawful practice as defined by the OCPA.  However, Watson has designated specific facts that she contends constitute an unlawful practice under the OCPA and those facts, viewed in her favor, are sufficient to raise a triable issue.  Given the broad definitions of unfair trade practice and deceptive trade practice and viewing the record and drawing inferences in Watson's favor, the court concludes that defendants are not entitled to summary judgment on the OCPA claim.

III.

Based upon the foregoing, Defendants' Motion for Summary Judgment (doc. no. 44) and Plaintiff's Motion for Partial Summary Judgment (doc. no. 41) are **DENIED**.  Plaintiff's federal and state law claims remain for trial.

IT IS SO ORDERED this 28th day of March, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1011p013.rev.docx